E-FILED
Thursday, 10 February, 2005 10:08:24 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

**FILED**

FEB - **9** 2005



MORGAN STANLEY DW INC.,

              Plaintiff,

v.

NANCY BANZ,

              Defendant.

**JOHN M. WATERS, Clerk**
**U.S. DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

DOCKET NO. $\underline{O5 \cdot 1042}$

Civil Action

---

## VERIFIED COMPLAINT

---

Morgan Stanley DW Inc. ("Morgan Stanley"), a Delaware corporation, by way of Complaint against defendant says:

### THE PARTIES

1. Plaintiff, Morgan Stanley, is a corporation of the State of Delaware, with its principal place of business in New York, New York.

2. Nancy Banz is an individual residing at 116 S. 7th Street, Wyoming, IL 61491.

### JURISDICTION

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332, because it involves citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

## FACTUAL BACKGROUND

### *The Agreement*

4.    On or about August 14, 2000, Banz commenced employment with Morgan Stanley as an Account Executive. At the commencement of her employment with Morgan Stanley, Banz signed a Financial Advisor Trainee Employment Agreement (the "Agreement"), a true copy of which is attached as Exhibit "A" hereto.

5.    The Agreement specifically provides that Banz agreed to the restrictions contained therein in consideration of Morgan Stanley's employment and compensation of her, and for other good and valuable consideration.

6.    The Agreement also provides that Banz would not use or disclose Morgan Stanley's confidential information, including the names, addresses, and telephone numbers of Morgan Stanley's customers:

### CUSTOMER LISTS AND OTHER CONFIDENTIAL INFORMATION

1.1    All records and documents concerning the business and affairs of Dean Witter (hereinafter "Company Records"), and the right to use Company Records, are, and will always be the confidential and exclusive property of Dean Witter. Company Records include, but are not limited to, Dean Witter books and records; holding book or customer book pages; the names, addresses, telephone numbers, and assets and obligations carried in the accounts [commonly called "positions"] of Dean Witter's customers; computer software or hardware for use in computer or word processing equipment; all training material forwarded to Employee during the training program including but not limited to books, papers, records, videotapes and recordings; and document or computer programs prepared or generated by the Employee by the use of Company Records. Company Records include the originals and all copies thereof. The Employee's use of Company Records will stop immediately upon the first of the following events to occur: the Employee's (1) voluntary or involuntary resignation, (2) retirement, (3) release, (4) discharge, (5) suspension, or (6) acceptance of other employment.

2

1.2    The Employee, during the course of his employment with Dean Witter, will not remove Company Records from the premises of Dean Witter in either original or copied form, except in the ordinary course of conducting business for, and subject to approval by, Dean Witter. The Employee will immediately deliver to Dean Witter, upon acceptance of other employment, at the time of termination of employment, or at any other time upon Dean Witter's request, any Company Records in the Employee's possession or control.

1.3    The Employee will not at any time assert any claim of ownership or other property interest in any Company Records. The Employee will permit Dean Witter to inspect any materials to be removed from Dean Witter offices when she accepts other employment or when his employment with Dean Witter is terminated.

1.4    The Employee will not disclose to any person or entity the contents, in whole or in part, of Company Records, except in the ordinary course of conducting business for Dean Witter.

1.5    Both during and subsequent to the course of his employment with Dean Witter, the Employee will not divulge to any person any information received during the course of his employment concerning the business of the firm and its financial affairs.

7.    The Agreement further provides that Banz would not solicit Morgan Stanley's

customers for a period of one year following the termination of her employment with Morgan

Stanley:

**UNFAIR COMPETITION**

2.1    For a period of one year following termination of employment for any reason, and within a radius of one hundred (100) miles from the Dean Witter office to which the Employee was last assigned, the Employee will not solicit or attempt to solicit, directly or indirectly, any of Dean Witter's customers who were served by or whose names became known to the Employee while in the employ of Dean Witter with respect to securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which Dean Witter or any of its affiliates is engaged.

2.2    For a period of one year following termination of employment for any reason, the Employee will not directly or indirectly, recruit or solicit any employee of Dean Witter for employment with any other organization which does business in securities, commodities, financial futures,

3

insurance, tax advantaged investments, mutual funds or any other line of business in which Dean Witter or any of its affiliates is engaged.

8.      The Agreement further provides for certain remedies in the event of breach,

including a right to an injunction:

## RIGHT TO INJUNCTION

3.      In the event the Employee breaches any of the promises concerning "Customer Lists And Other Confidential Information" or "Unfair Competition" contained in paragraphs 1 and 2 of this Agreement, the Employee acknowledges that Dean Witter's remedy at law for damages will be inadequate and that Dean Witter will be entitled to an injunction to prevent the Employee's prospective or continuing breach and to maintain the status quo pending arbitration as provided in paragraph 9 of this Agreement. Dean Witter's application to a court of law for an injunction will not constitute a waiver by Dean Witter of its right to arbitration as provided in paragraph 8 of this Agreement. The Employee further agrees that any court of law which issues an injunction shall refer any claim for damages to arbitration as provided in paragraph 8 of this Agreement.

### *Morgan Stanley's Code of Conduct*

9.      Morgan Stanley distributes copies of its updated Code of Conduct to all account

executives, including Banz, on an annual basis.

10.     The Code of Conduct defines "proprietary information" as follows:

"Proprietary information" is Firm information not known to the public that may have intrinsic value or that may provide the Firm with a competitive advantage. Proprietary information includes, but is not limited to . . . client lists . . . .

11.     The Code of Conduct defines "confidential information" as follows:

"Confidential information" is information that is not generally known to the public about MSDW, its clients, its counterparties or other parties with which the Firm has a relationship. Like proprietary information, confidential information may be present in various media and forms.

Examples of confidential information concerning the Firm and its employees, clients, counterparties include, but are not limited to:

4

· personal information;
· financial information;

* * *

· identities of clients or counterparties of MSDW;
· existence and terms of agreements with clients or counterparties; or
· programs and materials on the Firm's information systems.

12.    The Code of Conduct contains the following restrictions on the use and/or

disclosure of Morgan Stanley's confidential business information:

> Do not remove proprietary or confidential from Firm premises
> unless absolutely necessary. The Firm reserves the right to deny
> you permission to remove any proprietary or confidential
> information from Firm premises. If you take such information out
> of the office for business purposes, keep it on your person or in a
> secure place at all times and return it promptly to Firm premises.

13.    The Code of Conduct also contains the following additional restrictions on the use

and/or disclosure of Morgan Stanley's confidential business information:

> Do not disclose proprietary or confidential information to any
> person outside MSDW (including family members), or use it or
> permit any third party to use it without first obtaining Law or
> Compliance approval.

14.    The Code of Conduct also expressly restricts the post-employment use of Morgan

Stanley's confidential and proprietary information:

> You may not disclose proprietary or confidential information,
> including intellectual property, of the Firm or its employees,
> clients or counterparties when seeking employment outside of
> MSDW or after termination. You may not take such proprietary or
> confidential information when leaving MSDW or use or disclose
> such information for your personal benefit or for the benefit of
> your new employer or prospective new employer. You may not
> permit its disclosure or use by any third party.

15.    The Code of Conduct expressly advises Morgan Stanley's employees that Morgan

Stanley will vigorously enforce its rights against those current and former employees that use

and/or disclose Morgan Stanley's confidential or proprietary business information:

5

> MSDW will vigorously enforce its rights against current and
> former employees who improperly take, disclose or use proprietary
> or confidential information, or who permit others to do the same. . .

16.    Banz has acknowledged the terms of the Code of Conduct on an annual basis by affixing her electronic signature to the updated versions of the Code of Conduct on her Morgan Stanley computer terminals.

17.    Thus, throughout her employment with Morgan Stanley, Banz was well aware - - and acknowledged in writing - - that client account information and client lists were confidential and proprietary information of Morgan Stanley.

### *Account Distribution Agreement*

18.    Many of the customer accounts for which Banz was responsible for handling were assigned to her as a result of the retirement of Theresa Lukach, a former financial advisor with Morgan Stanley. The Morgan Stanley accounts that Ms. Lukach had been servicing were all re-assigned to Banz. In exchange, Banz agreed, among other things, not to solicit those clients if she ever decided to leave Morgan Stanley. A copy of the Account Distribution Acknowledgement between Morgan Stanley and Ms. Banz (the "Distribution Acknowledgement") is attached hereto as Exhibit "B."

### *Access to Confidential and Proprietary Information*

19.    During the course of her employment with Morgan Stanley, Banz had access to and became familiar with various confidential and proprietary information of Morgan Stanley, such as the identity and addresses of Morgan Stanley's customers, their specific past and future needs, their investment plans, portfolio information, and other various forms of confidential information. This information was disclosed to Banz in the course of her employment with Morgan Stanley to enable her to perform her job effectively.

6

20. Banz was advised both orally and in writing that such confidential business information, including customer identities and addresses, was considered highly confidential information by Morgan Stanley and that such information could not be used or disclosed by Banz except in her capacity as a Morgan Stanley employee.

21. Morgan Stanley has taken reasonable precautions to protect the confidentiality of its customer records and information, including, but not limited to, restricting access to customer records to the Account Executive servicing the particular account.

22. During Banz's employment with Morgan Stanley, Morgan Stanley expended considerable resources to retain her as an Account Executive, registering her and/or renewing her registration with the New York Stock Exchange, National Association of Securities Dealers, American Stock Exchange, and various securities commissions; compensating and providing her with full benefits and support; and giving her access to Morgan Stanley's customer accounts.

23. Morgan Stanley assigned Banz to service certain of Morgan Stanley's customers out of both Peoria, Illinois branch and the Streeter location. Banz was assigned to service approximately 935 such accounts, which contain approximately $56 million in assets. These accounts generated over $200,000 in commissions for Morgan Stanley in the last fiscal year.

*Defendant's Resignation and Contract Violations*

24. Without any prior warning to Morgan Stanley, Banz resigned her employment with Morgan Stanley, effective immediately in the late afternoon of Friday, February 4, 2005.

25. Morgan Stanley's Peoria office received a call later that same day from LPL Financial Services ("LPL"), a direct competitor of Morgan Stanley in the financial services industry, advising that Banz would be clearing her trades through LPL.

26. Since she abruptly resigned from Morgan Stanley on Friday, Banz has been actively soliciting Morgan Stanley's customers via telephone to transfer their accounts to her new

7

firm, which is located at same location where she worked for Morgan Stanley. Banz also sent these customers written information about her new firm in an obvious attempt to solicit their business for her new company.

27.    Since Banz's resignation, Morgan Stanley has received telephone calls from Morgan Stanley customers who are confused, based on the information that they received from Ms. Banz, whether their accounts now must be transferred to her new company.

28.    These solicitations demonstrate that confidential information obtained by Banz from Morgan Stanley has been unlawfully divulged, disclosed and/or used by Banz for her benefit to unfairly compete with Morgan Stanley.

29.    Banz's solicitation of Morgan Stanley customers using Morgan Stanley's confidential and proprietary information is in direct violation of her employment agreement with Morgan Stanley.

30.    The address, telephone numbers and account information of Morgan Stanley's customers are confidential and proprietary customer information that is not readily available to either Morgan Stanley's customers or the general public. Banz could only have obtained this confidential and proprietary customer information during her employment with Morgan Stanley.

31.    Banz's conduct in misappropriating Morgan Stanley's confidential and proprietary customer information, and using it to solicit Morgan Stanley's customers, has caused and, unless and until restrained by Order of this Court, will continue to cause, great and irreparable harm to Morgan Stanley. Such irreparable harm includes (a) a disclosure of confidential and proprietary information; (b) loss of confidentiality of client's records and financial dealings, and resulting loss of confidence and trust of clients, loss of good will and loss of business reputation; (c) threat to office stability; and (d) incalculable economic loss. Upon

8

information and belief, Banz's wrongful conduct has unjustly enriched and will continue to unjustly enrich both Banz and her new firm.

## FIRST COUNT

### (Breach of Contract)

32.    Morgan Stanley repeats and incorporates the allegations contained in paragraph 1 through 31 as if fully set forth at length herein.

33.    Banz has breached the Agreement and the Distribution Agreement with Morgan Stanley and/or common law obligations by, among other things, soliciting Morgan Stanley's customers by using Morgan Stanley's confidential and proprietary information.

34.    The conduct of Banz has been willful, wanton and with the intent to damage the business of Morgan Stanley.

35.    Banz's conduct in misappropriating Morgan Stanley's confidential and proprietary customer information, and wrongfully soliciting Morgan Stanley's customers, has caused and, unless and until restrained by Order of this Court, will continue to cause, great and irreparable harm to Morgan Stanley.

**WHEREFORE**, Morgan Stanley demands judgment against defendant for relief as follows:

(1)    for a temporary restraining order, preliminary injunction and permanent injunction restraining defendant and all those acting in concert or participation with defendant, from, among other things:

(a)    soliciting, or attempting to solicit, or initiating any contact with, directly or indirectly, any of Morgan Stanley's customers who were served by or whose names became known to defendant while in the employment of Morgan Stanley with respect to

9

securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which Morgan Stanley or any of its affiliates is engaged;

(b)     initiating any contacts with customers of Morgan Stanley whose accounts were not previously serviced by defendant during her employment with Morgan Stanley;

(c)     acquiring, seeking to acquire, misappropriating, using, and/or disclosing any proprietary or confidential business information of Morgan Stanley; and

(d)     soliciting, encouraging or otherwise inducing current Morgan Stanley employees to accept employment with their new business;

(2)     for a temporary restraining order and an injunction preliminarily and permanently ordering defendant, and all persons working in concert with defendant, including, but not limited to, any officer, agent, representative, or employee of her new firm, to return to Morgan Stanley all proprietary and/or confidential information of Morgan Stanley in their possession, custody or control, including but not limited to employment information, customer lists, account statements, account books, computer software, computer data, and any copies thereof;

(3)     for cost of suit and attorney's fees;

(4)     for such other and further relief as the court deems just and equitable.

## SECOND COUNT

### (Breach Of Duty Owed To Former Employer To Not Use Or Disclose Confidential Information)

36.     Morgan Stanley repeats and incorporates the allegations contained in paragraph 1 through 35 as if fully set forth at length herein.

37.     Banz has been the agent, servant and/or employee of Morgan Stanley. By virtue of her position as an Account Executive, Banz was responsible for Morgan Stanley customer

10

accounts and owed Morgan Stanley a duty of the highest good faith, integrity and fair dealing. That duty continued after defendant voluntarily ceased her employment with Morgan Stanley.

38.    Under the common law, Banz owed a duty to Morgan Stanley not to disclose, use or misappropriate Morgan Stanley's confidential and proprietary information.

39.    Banz has misappropriated, used and/or will necessarily use or disclose in the future confidential and proprietary information belonging to Morgan Stanley, in breach of her common law duty to Morgan Stanley.

40.    Use or disclosure by Banz of the above-stated confidential and proprietary information of Morgan Stanley has caused or will cause Morgan Stanley to suffer harm in the form of loss of its customers and sales income, as well as damage to business reputation and good will, and other damages.

41.    Unless Banz is restrained and enjoined from breaching her common law duty not to disclose, use and/or misappropriate confidential information of Morgan Stanley, Morgan Stanley will suffer immediate and irreparable injury and harm for which there is no adequate remedy at law.

**WHEREFORE**, Morgan Stanley demands judgment against defendant for relief as follows:

(1)    for a temporary restraining order, preliminary injunction and permanent injunction restraining defendant and all those acting in concert or participation with defendant, from, among other things:

(a)    soliciting, or attempting to solicit, or initiating any contact with, directly or indirectly, any of Morgan Stanley's customers who were served by or whose names became known to defendant while in the employment of Morgan Stanley with respect to

11

securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which Morgan Stanley or any of its affiliates is engaged;

        (b)     initiating any contacts with customers of Morgan Stanley whose accounts were not previously serviced by defendant during her employment with Morgan Stanley;

        (c)     acquiring, seeking to acquire, misappropriating, using, and/or disclosing any proprietary or confidential business information of Morgan Stanley; and

        (d)     soliciting, encouraging or otherwise inducing current Morgan Stanley employees to accept employment with their new business;

    (2)     for a temporary restraining order and an injunction preliminarily and permanently ordering defendant, and all persons working in concert with defendant, including, but not limited to, any officer, agent, representative, or employee of her new firm, to return to Morgan Stanley all proprietary and/or confidential information of Morgan Stanley in their possession, custody or control, including but not limited to employment information, customer lists, account statements, account books, computer software, computer data, and any copies thereof;

    (3)     for cost of suit and attorney's fees;

    (4)     for such other and further relief as the court deems just and equitable.

### THIRD COUNT

#### (Interference With Business Relationships)

    42.     Morgan Stanley repeats and incorporates the allegations contained in paragraph 1 through 41 as if fully set forth at length herein.

    43.     Banz was and is aware of the business relationships between Morgan Stanley and its customers.

12

44.     Morgan Stanley has a reasonable expectation that its business relationships with its customers will continue.

45.     By virtue of the past and continuing attempt by Banz to cause the transfer of existing and prospective business of Morgan Stanley to her new firm through using Morgan Stanley's confidential and proprietary information, Banz has knowingly and intentionally interfered with Morgan Stanley's existing and prospective contractual and business relationships.

46.     The interference by Banz with Morgan Stanley's existing and prospective business relationships was and is not legally justified.

47.     The interference with Morgan Stanley's existing and prospective business and contractual relationships is continuing and intentional and has proximately resulted and/or will proximately result in damage to Morgan Stanley, including the loss of its customers, sales income, and damage to business reputation and good will and other damages.

48.     Unless Banz is restrained and enjoined from unlawfully interfering with Morgan Stanley's business relationships, Morgan Stanley will suffer immediate and irreparable harm for which there is no adequate remedy at law.

**WHEREFORE**, Morgan Stanley demands judgment against defendant for relief as follows:

(1)     for a temporary restraining order, preliminary injunction and permanent injunction restraining defendant and all those acting in concert or participation with defendant, from, among other things:

(a)     soliciting, or attempting to solicit, or initiating any contact with, directly or indirectly, any of Morgan Stanley's customers who were served by or whose names became known to defendant while in the employment of Morgan Stanley with respect to

13

securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which Morgan Stanley or any of its affiliates is engaged;

(b)    initiating any contacts with customers of Morgan Stanley whose accounts were not previously serviced by defendant during her employment with Morgan Stanley;

(c)    acquiring, seeking to acquire, misappropriating, using, and/or disclosing any proprietary or confidential business information of Morgan Stanley; and

(d)    soliciting, encouraging or otherwise inducing current Morgan Stanley employees to accept employment with their new business;

(2)    for a temporary restraining order and an injunction preliminarily and permanently ordering defendant, and all persons working in concert with defendant, including, but not limited to, any officer, agent, representative, or employee of her new firm, to return to Morgan Stanley all proprietary and/or confidential information of Morgan Stanley in their possession, custody or control, including but not limited to employment information, customer lists, account statements, account books, computer software, computer data, and any copies thereof;

(3)    for cost of suit and attorney's fees;

(4)    for such other and further relief as the court deems just and equitable.

### FOURTH COUNT

#### (Unfair Competition)

49.    Morgan Stanley repeats and incorporates the allegations contained in paragraph 1 through 48 as if fully set forth at length herein.

50.    The foregoing conduct of Banz constitutes unfair competition.

14

51.    Such unfair competition has proximately caused and/or will proximately result in damage to Morgan Stanley, including the loss of its customers, sales income and damage to business reputation and good will and other damages.

52.    Unless Banz is restrained and enjoined from such unfair competition, Morgan Stanley will suffer immediate and irreparable injury and harm for which there is no adequate remedy at law.

**WHEREFORE**, Morgan Stanley demands judgment against defendant for relief as follows:

(1)    for a temporary restraining order, preliminary injunction and permanent injunction restraining defendant and all those acting in concert or participation with defendant, from, among other things:

(a)    soliciting, or attempting to solicit, or initiating any contact with, directly or indirectly, any of Morgan Stanley's customers who were served by or whose names became known to defendant while in the employment of Morgan Stanley with respect to securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which Morgan Stanley or any of its affiliates is engaged;

(b)    initiating any contacts with customers of Morgan Stanley whose accounts were not previously serviced by defendant during her employment with Morgan Stanley;

(c)    acquiring, seeking to acquire, misappropriating, using, and/or disclosing any proprietary or confidential business information of Morgan Stanley; and

(d)    soliciting, encouraging or otherwise inducing current Morgan Stanley employees to accept employment with their new business;

15

(2)     for a temporary restraining order and an injunction preliminarily and permanently ordering defendant, and all persons working in concert with defendant, including, but not limited to, any officer, agent, representative, or employee of her new firm, to return to Morgan Stanley all proprietary and/or confidential information of Morgan Stanley in their possession, custody or control, including but not limited to employment information, customer lists, account statements, account books, computer software, computer data, and any copies thereof;

(3)     for cost of suit and attorney's fees;

(4)     for such other and further relief as the court deems just and equitable.

## FIFTH COUNT

### (Breach Of Fiduciary Duty)

53.     Morgan Stanley repeats and incorporates the allegations contained in paragraph 1 through 52 as if fully set forth at length herein.

54.     The foregoing conduct of Banz constitutes a breach of her fiduciary duty to Morgan Stanley.

55.     As a result of Banz's breach of fiduciary duty, Morgan Stanley has suffered and/or will suffer loss of its customers, sales income and damage to business reputation and good will and other damages.

56.     Unless Banz is restrained and enjoined from breaching her fiduciary duty, Morgan Stanley will suffer immediate and irreparable injury and harm for which there is no adequate remedy at law.

**WHEREFORE**, Morgan Stanley demands judgment against defendant for relief as follows:

16

(1) for a temporary restraining order, preliminary injunction and permanent injunction restraining defendant and all those acting in concert or participation with defendant, from, among other things:

(a) soliciting, or attempting to solicit, or initiating any contact with, directly or indirectly, any of Morgan Stanley's customers who were served by or whose names became known to defendant while in the employment of Morgan Stanley with respect to securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which Morgan Stanley or any of its affiliates is engaged;

(b) initiating any contacts with customers of Morgan Stanley whose accounts were not previously serviced by defendant during her employment with Morgan Stanley;

(c) acquiring, seeking to acquire, misappropriating, using, and/or disclosing any proprietary or confidential business information of Morgan Stanley; and

(d) soliciting, encouraging or otherwise inducing current Morgan Stanley employees to accept employment with their new business;

(2) for a temporary restraining order and an injunction preliminarily and permanently ordering defendant, and all persons working in concert with defendant, including, but not limited to, any officer, agent, representative, or employee of her new firm, to return to Morgan Stanley all proprietary and/or confidential information of Morgan Stanley in their possession, custody or control, including but not limited to employment information, customer lists, account statements, account books, computer software, computer data, and any copies thereof;

(3) for cost of suit and attorney's fees;

(4) for such other and further relief as the court deems just and equitable.

17

## SIXTH COUNT

### (Conversion)

57.    Morgan Stanley repeats and incorporates the allegations contained in paragraph 1 through 56 as if fully set forth at length herein.

58.    The foregoing conduct of Banz constitutes a conversion of Morgan Stanley's property.

59.    As a result of Banz's unlawful conversion, Morgan Stanley has suffered and/or will suffer loss of its customers, sales income and damage to business reputation and good will and other damages.

60.    Unless Banz is restrained and enjoined from converting property of Morgan Stanley to her own unlawful use, Morgan Stanley will suffer immediate and irreparable injury and harm for which there is no adequate remedy at law.

**WHEREFORE**, Morgan Stanley demands judgment against defendant for relief as follows:

(1)    for a temporary restraining order, preliminary injunction and permanent injunction restraining defendant and all those acting in concert or participation with defendant, from, among other things:

(a)    soliciting, or attempting to solicit, or initiating any contact with, directly or indirectly, any of Morgan Stanley's customers who were served by or whose names became known to defendant while in the employment of Morgan Stanley with respect to securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which Morgan Stanley or any of its affiliates is engaged;

18

(b)     initiating any contacts with customers of Morgan Stanley whose accounts were not previously serviced by defendant during her employment with Morgan Stanley;

(c)     acquiring, seeking to acquire, misappropriating, using, and/or disclosing any proprietary or confidential business information of Morgan Stanley; and

(d)     soliciting, encouraging or otherwise inducing current Morgan Stanley employees to accept employment with their new business;

(2)     for a temporary restraining order and an injunction preliminarily and permanently ordering defendant, and all persons working in concert with defendant, including, but not limited to, any officer, agent, representative, or employee of her new firm, to return to Morgan Stanley all proprietary and/or confidential information of Morgan Stanley in their possession, custody or control, including but not limited to employment information, customer lists, account statements, account books, computer software, computer data, and any copies thereof;

(3)     for cost of suit and attorney's fees;

(4)     for such other and further relief as the court deems just and equitable.

## SEVENTH COUNT

### (Violation of Illinois Trade Secrets Act)

61.     Morgan Stanley repeats and incorporates allegations contained in paragraphs 1 through 60 as if fully set forth at length.

62.     The foregoing conduct constitutes a violation of Illinois' Trade Secrets Act, 765 ILCS 1065/1 et. seq.

63.     As a consequence, Morgan Stanley has suffered and will continue to suffer irreparable harm and currently incalculable financial loss.

19

**WHEREFORE**, Morgan Stanley demands judgment against defendant for relief as follows:

(1)    for a temporary restraining order, preliminary injunction and permanent injunction restraining defendant and all those acting in concert or participation with defendant, from, among other things:

(a)    soliciting, or attempting to solicit, or initiating any contact with, directly or indirectly, any of Morgan Stanley's customers who were served by or whose names became known to defendant while in the employment of Morgan Stanley with respect to securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which Morgan Stanley or any of its affiliates is engaged;

(b)    initiating any contacts with customers of Morgan Stanley whose accounts were not previously serviced by defendant during her employment with Morgan Stanley;

(c)    acquiring, seeking to acquire, misappropriating, using, and/or disclosing any proprietary or confidential business information of Morgan Stanley; and

(d)    soliciting, encouraging or otherwise inducing current Morgan Stanley employees to accept employment with their new business;

(2)    for a temporary restraining order and an injunction preliminarily and permanently ordering defendant, and all persons working in concert with defendant, including, but not limited to, any officer, agent, representative, or employee of her new firm, to return to Morgan Stanley all proprietary and/or confidential information of Morgan Stanley in their possession, custody or control, including but not limited to employment information, customer lists, account statements, account books, computer software, computer data, and any copies thereof;

20

(3)    for cost of suit and attorney's fees;

(4)    for such other and further relief as the court deems just and equitable.

Respectfully submitted,

BY: _____

James R. Morrison, Esquire, Local Counsel
Attorney for Plaintiffs
Westervelt, Johnson, Nicoll and Keller, LLC
411 Hamilton Boulevard, 14th Floor
Peoria, Illinois 61602

Mark J. Oberstaedt, Esquire, Lead Counsel
Christopher P. Dolotosky, Esquire
Attorneys for Plaintiffs
ARCHER & GREINER
A Professional Corporation
One Centennial Square
P.O. Box 3000
Haddonfield, New Jersey 08033
(856) 795-2121

Dated: February 9, 2005

1437120v1

21

**EXHIBIT A**

**MORGAN STANLEY DEAN WITTER**

**FINANCIAL ADVISOR TRAINEE EMPLOYMENT AGREEMENT**

This Agreement is made between Dean Witter Reynolds Inc., a Delaware Corporation, (referred to as "Dean Witter") NANCY S. BANZ _____ (referred to as the "Employee").

In consideration of Dean Witter's employment and compensation of the Employee as a trainee for a position as an Account Executive and Dean Witter's incurring of costs of training the Employee in Dean Witter's training program, and other good and valuable consideration, the parties hereby agree as follows:

**CUSTOMER LISTS AND OTHER CONFIDENTIAL INFORMATION**

All records and documents concerning the business and affairs of Dean Witter (hereinafter "Company Records"), and the right to use Company Records, are, and will always be the confidential and exclusive property of Dean Witter. Company Records include, but are not limited to, Dean Witter books and records; holding book or customer book pages; the names, addresses, telephone numbers, and assets and obligations carried in the accounts [commonly called positions"] of Dean Witter's customers; computer software or hardware for use in computer or word processing equipment; all training material forwarded to Employee during the training program including but not limited to books, papers, records, videotapes and recordings; and document or computer programs prepared or generated by the Employee by the use of Company Records. Company Records include the originals and all copies thereof. The Employee's use of Company Records will stop immediately upon the first of the following events to occur: the Employee's (1) voluntary or involuntary resignation, (2) retirement, (3) release, (4) discharge, (5) suspension, or (6) acceptance of other employment.

2   The Employee, during the course of his employment with Dean Witter, will not remove Company Records from the premises of Dean Witter in either original or copied form, except in the ordinary course of conducting business for, and subject to approval by, Dean Witter. The Employee will immediately deliver to Dean Witter, upon acceptance of other employment, at the time of termination of employment, or at any other time upon Dean Witter's request, any Company Records in the Employee's possession or control.

3   The Employee will not at any time assert any claim of ownership or other property interest in any Company Records. The Employee will permit Dean Witter to inspect any materials to be removed from Dean Witter offices when he accepts other employment or when his employment with Dean Witter is terminated.

4   The Employee will not disclose to any person or entity the contents, in whole or in part, of Company Records, except in the ordinary course of conducting business for Dean Witter.

5   Both during and subsequent to the course of his employment with Dean Witter, the Employee will not divulge to any person any information received during the course of his employment concerning the business of the firm and its financial affairs.

**UNFAIR COMPETITION**

.1   For a period of one year following termination of employment for any reason, and within a radius of one hundred (100) miles from the Dean Witter office to which the Employee was last assigned, the Employee will not solicit or attempt to solicit, directly or indirectly, any of Dean Witter's customers who were served by or whose names became known to the Employee while in the employ of Dean Witter with respect to securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which Dean Witter or any of its affiliates is engaged.

.2   For a period of one year following termination of employment for any reason, the Employee will not, directly or indirectly, recruit or solicit any employee of Dean Witter for employment with any other organization which does business in securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which Dean Witter or any of its affiliates is engaged.

**RIGHT TO INJUNCTION**

In the event the Employee breaches any of the promises concerning "Customer Lists And Other Confidential Information" or "Unfair Competition" contained in paragraphs 1 and 2 of this Agreement, the Employee acknowledges that Dean Witter's remedy at law for damages will be inadequate and that Dean Witter will be entitled to an injunction to prevent the Employee's prospective or continuing breach and to maintain the status quo pending arbitration as provided in paragraph 9 of this Agreement. Dean Witter's application to a court of law for an injunction will not constitute a waiver by Dean Witter of its right to arbitration as provided in paragraph 9 of this Agreement. The Employee further agrees that any court of law which issues an injunction shall refer any claim for damages to arbitration as provided in paragraph 9 of this Agreement.

**REPAYMENT OF TRAINING COSTS**

In the event of voluntary termination or termination for cause either of which occurs within three years from the date the Employee is assigned a Dean Witter production number, the Employee will pay to Dean Witter the amount of $50,000, representing the expense incurred by Dean Witter in training the Employee. This amount will be reduced by $8,333.33 for each full six-month period Employee is in production at Dean Witter. The above liquidated damages will not constitute liquidated damages for other breaches of this Agreement or losses to Dean Witter.

MSDW 0112   (5-92) Rev (5-96 front)

**HOLD HARMLESS**

The Employee will indemnify and hold Dean Witter harmless against any and all losses or liabilities incurred by Dean Witter as the result of the Employee's breach of any of the promises herein, or due to the Employee's errors, customer account debits, commission deficits, rule violations or violations of Dean Witter's policies during the course of Employee's employment. Employee agrees that DWR shall have the right, without notice, to withhold from any amounts payable, due or held in an account for the Employee, as compensation or otherwise, amount(s) equal to any such losses or liabilities.

**TERMINATION OF EMPLOYMENT**

The Employee's employment by Dean Witter may be terminated by either party at any time with or without cause.

**COMPENSATION**

Provided Employee remains in full-time continuous employment with Dean Witter as an Financial Advisor Trainee, Dean Witter agrees to pay Employee a monthly salary of $ 2,000.— during the training period prior to employee's going into production. Employee understands and agrees that this monthly salary covers all hours worked up to sixty hours in one week.

Employee understands and agrees that this salary will be calculated in the following manner:

$_____ hourly rate (first 40 hours)
$_____ time and one-half the hourly rate (hours 41-60 in a week)

Hours worked in excess of sixty (60) in any given workweek (Monday-Sunday) will be compensated at a rate of time and one-half the hourly rate stated above. Employee understands that work in excess of sixty (60) hours per workweek must have prior approval of Employee's branch manager.

Upon entering into production after the initial training program, Employee's compensation shall be paid in accordance with Dean Witter's standard compensation program for Financial Advisor Trainees and Financial Advisors as in effect from time to time.

**8. ENTIRE AGREEMENT**

This writing constitutes the entire agreement of the parties with respect to the subject matter herein. This Agreement may be amended only by a writing signed by both the Employee and Dean Witter.

**9. ARBITRATION**

Any controversy or claim arising out of or relating to this Agreement, or its breach, will be settled by arbitration before either the National Association of Securities Dealers, Inc. or the New York Stock Exchange, Inc., as Dean Witter may elect, in accordance with their respective rules, and judgment upon the award entered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Employee agrees to stipulate, upon request by Dean Witter to expedited hearing procedures for such arbitration. This paragraph will not be deemed a waiver of Dean Witter's right to injunctive relief as provided for in paragraph 3 of this Agreement.

**10. SUCCESSORS**

The benefits and obligations of this Agreement will run to the successors and assigns of Dean Witter.

**11. GOVERNING LAW**

This Agreement will be governed and construed in accordance with the laws of the state where the Employee signs this Agreement, as indicated below.

**12. WAIVER**

Dean Witter's failure to enforce a breach of any covenant of this Agreement will not constitute a waiver of Dean Witter's right to enforce any other breach of the same or any other covenant.

**13. SEVERABILITY**

If any provision of this Agreement is, for any reason, adjudged to be void, invalid or unenforceable by an arbitrator or arbitration panel, a regulatory body or a court of law, the remainder of the Agreement will still continue and remain in full force and effect.

SIGNED IN THE STATE OF ___Illinois___

___8-14-00___
Date

Employee's Signature

DEAN WITTER REYNOLDS INC.

___8-14-00___
Date

Branch Manager's Signature

**EXHIBIT B**

# Morgan Stanley

## Account Distribution Acknowledgment

This Account Distribution Acknowledgement (the "Acknowledgement") is entered into between Morgan Stanley DW Inc. d/b/a Morgan Stanley ("MSDW") and ___Nancy___ ___Baul___ (the "Employee") on this __25__ day of __Sept__, 20__03__, for the purpose of assigning to Employee clients, prospective client leads or client accounts which were formerly opened, developed and/or serviced by, or had a prior business relationship with, an employee of MSDW other than Employee. For purposes of this Acknowledgement, MSDW shall include any and all parents, subsidiaries, affiliates, predecessors and successor entities.

Employee understands and agrees that the existing client accounts, relationships and account leads or prospects are a valuable asset of MSDW and their assignment to Employee by MSDW for development and/or servicing is desired by Employee and may result in additional clients or benefits to Employee including but not limited to commissions and the referral of related client accounts; and

Employee further agrees that but for the assignment of the above-referenced client leads, existing clients and accounts and the referral of related clients and accounts to Employee, said leads, clients and accounts would not be available to Employee.

In exchange for participating in an account distribution, Employee further agrees to the conditions set forth in this Acknowledgement as follows:

**1. Assigned Clients and Leads.** During Employee's employment by MSDW as a Financial Advisor, MSDW may assign to the Employee one or more client prospects or leads, clients or client accounts formerly identified, developed, opened, or serviced by a MSDW employee other than the Employee (the "Assigned Clients").

**2. Related Clients.** Assigned Clients may refer new client accounts to the Employee (the "Related Clients"). The Employee acknowledges and agrees that the Related Clients are directly derived from the Assigned Clients.

**3. Confidential and Proprietary Company Information and Records.** It is understood and agreed that all files, papers, memoranda, letters, floppy disks, facsimile, electronic or other communications whether original, duplicated, computerized, memorized, handwritten or in any other form, and all information derived therefrom relating to the business of MSDW and MSDW employees and clients, including but not limited to the names, addresses, telephone, e-mail or any other identifying numbers and financial information of the Assigned Clients and the Related Clients (hereinafter collectively "Confidential and Proprietary Information and Records") are confidential and the sole and exclusive property of MSDW. Employee further agrees that Confidential and Proprietary Information and Records whether provided to Employee by MSDW or by the Assigned Clients or Related Clients is entrusted to Employee as an employee and sales representative of MSDW. Employee agrees that Confidential and Proprietary Information and Records in Employee's possession are and remain the property of MSDW and, as such, are not to be removed from or used outside of any MSDW offices except as authorized by MSDW. In addition, Employee agrees to return immediately all Confidential and Proprietary Information and Records in Employee's possession or control should Employee's employment terminate for any reason and at any time. Employee further agrees not to divulge or disclose Confidential and Proprietary Information and Records or any other confidential information relating to any other client to any person or entity

# Morgan Stanley

read and reviewed this Acknowledgement in its entirety and has been given an opportunity to ask
MSDW questions about it.  By signing below, Employee agrees that Employee understands the
provisions of this Acknowledgement and knowingly and freely agrees to its terms.

_____          _____
Financial Advisor/Employee                Date


Morgan Stanley DW Inc.

_____          _____
By:  Branch Office Manager                Date

## IN THE UNTED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

|  |  |
|---|---|
| MORGAN STANLEY DW, INC., | : |
| Plaintiff, | : |
| v. | : DOCKET NO. |
| NANCY BANZ, | : |
| Defendant. | : Civil Action |

## **VERIFYING AFFIDAVIT OF JEFFREY PRINCE**

JEFFREY PRINCE, upon his oath, deposes and says:

1.    I am the Executive Director and Area Manager for the Morgan Stanley DW Inc. ("Morgan Stanley") branch located at 7555 North Knoxville Avenue, Peoria, Illinois, 61614, and the former Morgan Stanley office of convenience located at 321 East Main Street, Streeter, Illinois 61364 (the "Streeter location"). I have personal knowledge of the facts set forth herein.

2.    I have reviewed the allegations of the Complaint filed in this matter and the allegations are true to the best of my knowledge, except where stated on information and belief, in which case I believe them to be true.

3.    I specifically affirm that a copy of Nancy Banz's ("Banz") employment contract with Morgan Stanley is attached to the Complaint as Exhibit "A."



**EXHIBIT**

C

4.     I specifically affirm that Ms. Banz electronically acknowledged each year that she would abide by Morgan Stanley's Conduct of Code, the relevant terms of which are set forth in the Complaint.

5.     Morgan Stanley trained Ms. Banz to become a financial advisor. She had no prior experience in that position before joining Morgan Stanley.

6.     Ms. Banz was last assigned by Morgan Stanley to the Streeter location.

7.     The Streeter location is what is known in the industry as an "office of convenience." The Streeter location had been owned and operated by a Morgan Stanley financial advisor named Theresa Lukach until Ms. Lukach retired from Morgan Stanley effective April 1, 2003. Ms. Lukach continues to own the Streeter location.

8.     When Ms. Lukach retired from Morgan Stanley under what is known in the industry as a "sunset agreement," the Morgan Stanley accounts that Ms. Lukach had been servicing were all re-assigned to Ms. Banz. In exchange, Ms. Banz agreed, among other things, not to solicit those clients to leave Morgan Stanley if she ever decided to leave herself. A copy of the Account Assignment Acknowledgement between Morgan Stanley and Ms. Banz is attached to the Complaint as Exhibit "B."

9.     Ms. Banz continued to service those Morgan Stanley accounts from the Streeter location. Because we are prohibited from paying rent to a building owner who also receives commission revenues from the firm, Morgan Stanley could not pay the rent directly to Ms. Lukach. As a result, Ms. Banz paid the rent directly for the Streeter location.

10.    As set forth in the Complaint, Ms. Banz voluntarily resigned her employment with Morgan Stanley effective immediately late in the afternoon of Friday, February 4, 2005. A copy of her resignation letter is attached hereto as Exhibit "1."

11.    Immediately following her resignation, my office received a call from LPL Financial Services, indicating that Ms. Banz would be clearing her trades through LPL. LPL acts as a clearing house for brokers with private investment firms.

12.    Since she abruptly resigned from Morgan Stanley on Friday, Ms. Banz has been actively soliciting Morgan Stanley's customers to transfer their accounts to her new firm, including the accounts that she was re-assigned pursuant to the Account Assignment Acknowledgement.

13.    I have learned that Ms. Banz will now be operating her new firm out of the same Streeter location where she worked for Morgan Stanley.

14.    I have personally spoken on the telephone with several Morgan Stanley customers who expressed concern that their accounts may have to move to Ms. Banz's new firm. Clearly, the clients are now very confused by the communications they are receiving from Ms. Banz.

15.    Attached hereto as Exhibit "2" is a copy of a written package mailed by Ms. Banz to one of Morgan Stanley's customers whose account she was servicing for Morgan Stanley. The clients' names and address have been redacted for confidentiality purposes.

JEFFREY PRINCE

Sworn to before me this ___ day of February 2005.

_Caryl Carrescia_

Notary Public

"OFFICIAL SEAL"
CARYL CARRESCIA
COMMISSION EXPIRES 04/04/05

1398526v1

# Exhibit 1

# Exhibit 2

# LIFESPAN

**NANCY BANZ**
LPL Financial Advisor

### FINANCIAL, INC.

February 7, 2005

Theresa Lukach
219 Prospect Ave
PO Box 256
Streator, IL 61364

Dear Theresa,

I am pleased to announce that I have joined the firm of LifeSpan Financial, Inc.
My new location and phone number are as follows:

**LifeSpan Financial, Inc.
321 East Main Street
Streator IL 61364
Phone: 815-672-6200**

The individuals at LifeSpan Financial, Inc. are affiliated with the national independent
brokerage firm, Linsco/Private Ledger (LPL).

Sincerely,

Nancy Banz
LPL Financial Advisor

This is for informational purposes only and not a solicitation to buy.

§JS 44 (Rev. 11/04)                    **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information ~~RECEIVED~~ replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

FEB - 9 2005

U.S. CLERK'S OFFICE
Morgan Stanley DW In PEORIA, ILLINOIS

**DEFENDANTS**

05-1042

Nancy Banz

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)
James R. Morrison
Westervelt, Johnson, Nicoll & Keller, LLC
411 Hamilton Blvd, Ste. 1400, Peoria, IL 61602
**(c)** Attorney's (Firm Name, Address, and Telephone Number) (309)671-3550
Mark J. Oberstaedt, Archer & Greiner
One Centennial Square, Haddonfield, NJ 08033

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ❏ 1 U.S. Government Plaintiff
- ❏ 3 Federal Question (U.S. Government Not a Party)
- ❏ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ❏ 1 | Incorporated or Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 610 Agriculture | ❏ 422 Appeal 28 USC 158 | ❏ 400 State Reapportionment |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 362 Personal Injury - | ❏ 620 Other Food & Drug | ❏ 423 Withdrawal | ❏ 410 Antitrust |
| ❏ 130 Miller Act | ❏ 315 Airplane Product | Med. Malpractice | ❏ 625 Drug Related Seizure | 28 USC 157 | ❏ 430 Banks and Banking |
| ❏ 140 Negotiable Instrument | Liability | ❏ 365 Personal Injury - | of Property 21 USC 881 | | ❏ 450 Commerce |
| ❏ 150 Recovery of Overpayment | ❏ 320 Assault, Libel & | Product Liability | ❏ 630 Liquor Laws | **PROPERTY RIGHTS** | ❏ 460 Deportation |
| & Enforcement of Judgment | Slander | ❏ 368 Asbestos Personal | ❏ 640 R.R. & Truck | ❏ 820 Copyrights | ❏ 470 Racketeer Influenced and |
| ❏ 151 Medicare Act | ❏ 330 Federal Employers' | Injury Product | ❏ 650 Airline Regs. | ❏ 830 Patent | Corrupt Organizations |
| ❏ 152 Recovery of Defaulted | Liability | Liability | ❏ 660 Occupational | ❏ 840 Trademark | ❏ 480 Consumer Credit |
| Student Loans | ❏ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ❏ 490 Cable/Sat TV |
| (Excl. Veterans) | ❏ 345 Marine Product | ❏ 370 Other Fraud | ❏ 690 Other | | ❏ 810 Selective Service |
| ❏ 153 Recovery of Overpayment | Liability | ❏ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ❏ 850 Securities/Commodities/ |
| of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 380 Other Personal | ❏ 710 Fair Labor Standards | ❏ 861 HIA (1395ff) | Exchange |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle | Property Damage | Act | ❏ 862 Black Lung (923) | ❏ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability | ❏ 385 Property Damage | ❏ 720 Labor/Mgmt. Relations | ❏ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ❏ 195 Contract Product Liability | ❏ 360 Other Personal | Product Liability | ❏ 730 Labor/Mgmt.Reporting | ❏ 864 SSID Title XVI | ❏ 890 Other Statutory Actions |
| ❏ 196 Franchise | Injury | | & Disclosure Act | ❏ 865 RSI (405(g)) | ❏ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ❏ 892 Economic Stabilization Act |
| ❏ 210 Land Condemnation | ❏ 441 Voting | ❏ 510 Motions to Vacate | ❏ 790 Other Labor Litigation | ❏ 870 Taxes (U.S. Plaintiff | ❏ 893 Environmental Matters |
| ❏ 220 Foreclosure | ❏ 442 Employment | Sentence | ❏ 791 Empl. Ret. Inc. | or Defendant) | ❏ 894 Energy Allocation Act |
| ❏ 230 Rent Lease & Ejectment | ❏ 443 Housing/ | **Habeas Corpus:** | Security Act | ❏ 871 IRS—Third Party | ❏ 895 Freedom of Information |
| ❏ 240 Torts to Land | Accommodations | ❏ 530 General | | 26 USC 7609 | Act |
| ❏ 245 Tort Product Liability | ❏ 444 Welfare | ❏ 535 Death Penalty | | | ❏ 900 Appeal of Fee Determination |
| ❏ 290 All Other Real Property | ❏ 445 Amer. w/Disabilities - | ❏ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ❏ 550 Civil Rights | | | to Justice |
| | ❏ 446 Amer. w/Disabilities - | ❏ 555 Prison Condition | | | ❏ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ❏ 440 Other Civil Rights | | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding | ❏ 2 Removed from State Court | ❏ 3 Remanded from Appellate Court | ❏ 4 Reinstated or Reopened | ❏ 5 Transferred from another district (specify) | ❏ 6 Multidistrict Litigation | ❏ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
12 U.S.C. 1332
Brief description of cause:
Injunction to compel arbitration

**VII. REQUESTED IN COMPLAINT:**
❏ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
**DEMAND $**
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ❏ Yes ❏ No

**VIII. RELATED CASE(S) IF ANY**
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE 2-9-05
SIGNATURE OF ATTORNEY OF RECORD
_mmR, Morrison_

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____