E-FILED
Thursday, 10 February, 2005  10:19:31 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS



**FILED**

FEB - **9** 2005

**JOHN M. WATERS, Clerk**
**U.S. DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

MORGAN STANLEY DW INC.,

           Plaintiff,

        No. _05 -1042_

v.

NANCY BANZ,

        Defendant.

/

---

Local Counsel
By:  James R. Morrison, Esquire
Attorney for Plaintiff
Westervelt, Johnson, Nicoll and Keller, LLC
411 Hamilton Boulevard, 14th Floor
Peoria, IL 61602
(309) 671-3550

Lead Counsel
Mark J. Oberstaedt, Esquire
Christopher P. Dolotosky, Esquire
Attorneys for Plaintiff
Archer & Greiner
A Professional Corporation
One Centennial Square
P.O. Box 3000
Haddonfield, NJ  08043-0968
(856) 795-2121

/

---

## MOTION FOR A TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

Now comes plaintiff, Morgan Stanley DW Inc. ("Morgan Stanley"), by and through its

undersigned attorneys, and respectfully requests that pending arbitration this Court enter a

temporary restraining order and/or preliminary injunction against Defendant Nancy Banz

("Banz" or "defendant")  pursuant to Rule 65 of the Federal Rules of Civil Procedure.

1.    Morgan Stanley has filed a verified complaint with the Court, which is incorporated herein and made a part hereof by reference.

2.    Pursuant to section 10335 of the National Association of Securities Dealers ("NASD") Code of Arbitration Procedure, Morgan Stanley has the express and exclusive right to seek temporary injunctive relief from a court of competent jurisdiction pending an arbitration hearing before a full panel of duly-appointed arbitrators.

3.    As stated in Morgan Stanley's complaint, defendant was an employee of Morgan Stanley at its office of convenience in Streator, Illinois.

4.    When she accepted employment at Morgan Stanley, defendant agreed to terms and conditions of employment and executed a Morgan Stanley employment agreement which prohibited her from (1) communicating to third parties the contents of any Morgan Stanley records or customer information, (2) soliciting for one year the customers she serviced or whose names she learned while at Morgan Stanley and (3) soliciting for one year Morgan Stanley employees. A copy of the Employment Agreement is attached as Exhibit "A." Defendant also signed an "Account Distribution Acknowledgment" in which she further agreed not to solicit a specific block of Morgan Stanley customer accounts that were assigned to her by Morgan Stanley upon the retirement of another Morgan Stanley account executive. A copy of the Account Distribution Agreement is attached as Exhibit "B."

5.    On Friday, February 4, 2005, defendant resigned from her position at Morgan Stanley and began actively soliciting Morgan Stanley's customers to transfer their accounts to her new firm. She continues to operate out of the exact same office she utilized when employed by Morgan Stanley.

2

6.   Morgan Stanley has learned that the Morgan Stanley customers whose accounts defendant serviced have received written material in the mail from defendant and that its customers have also been contacted/solicited by defendant via telephone. Affidavit of Jeffrey Prince, attached hereto as Exhibit "C." Defendant has also retained all of client records in violation of the Agreement.

7.   By virtue of her words and conduct, it is clear that defendant has wrongfully converted Morgan Stanley's confidential and preparatory information and is attempting to divert Morgan Stanley's customers to her new firm.

8.   For the reasons stated herein, in Morgan Stanley's brief in support of this motion (which is incorporated herein by reference), and in the verified complaint, unless defendant is enjoined from converting Morgan Stanley's property to her own use, and unless she is enjoined from soliciting Morgan Stanley's clients and employees, Morgan Stanley will be irreparably harmed by:

A.   Disclosure of trade secrets, customer lists, and other confidential information which are solely the property of Morgan Stanley and its clients;

B.   Loss of confidentiality of clients' records and financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation;

C.   Loss of personnel, damage to office stability and a threat to the enforcement of reasonable contracts; and

D.   Present economic loss, which is unascertainable at this time, and future economic loss, which costs have been adjudicated to be incalculable.

3

9. Morgan Stanley has no adequate remedy at law, a fact defendant admits. Exhibit "A", at ¶ 3.

10. Defendant expressly consented to injunctive relief. Exhibit "A", at ¶ 3.

Wherefore, Morgan Stanley respectfully requests that this Court order that:

A. Until further Order of this Court or the Order of a full panel of arbitrators pursuant to Rule 10335 of the Rules of Arbitration of the National Association of Securities Dealers, defendant and all those acting in concert or participation with her, are hereby enjoined from:

1. Directly or indirectly soliciting or attempting to solicit, or initiating any contact with, any of Morgan Stanley's customers who were serviced by or whose names became known to defendant while in the employ of Morgan Stanley with respect to securities, commodities and financial futures, insurance, tax advantaged investments, mutual funds and any other line of business in which Morgan Stanley or any of its affiliates is engaged;

2. Using or otherwise disclosing any proprietary or confidential business information belonging to Morgan Stanley, including names, addresses and phone numbers of Morgan Stanley's customers;

3. Acquiring, seeking to acquire, or misappropriating any proprietary or confidential business information belonging to Morgan Stanley;

4

         4.      Soliciting, encouraging or otherwise inducing current Morgan

                 Stanley employees to accept employment with defendant's new

                 firm;

    B.      Defendant, and all persons acting in concert or participation with

defendant, shall return to Morgan Stanley within two (2) days all

proprietary and/or confidential information of Morgan Stanley in their

possession, including but not limited to customer lists, account

information, computers, computer software, computer diskettes, and any

copies thereof, whether maintained in paper or electronic form;

    C.      A preliminary injunction hearing shall be conducted by this Court on

                _____ at _____, at which time the Court shall determine

                whether to continue the restraints contained in this Order;

    D.      The parties shall proceed to arbitration before the National Association of

Securities Dealers.

                 Respectfully submitted,
                 Attorneys for Plaintiff

BY: *James R. Morrison by Nicholl Y. Mill*

                 James R. Morrison, Esquire, Local Counsel
                 Westervelt, Johnson, Nicoll and Keller, LLC
                 411 Hamilton Boulevard, 14th Floor
                 Peoria, IL 61602
                 (309) 671-3550

                 Mark J. Oberstaedt, Esquire, Lead Counsel
                 Archer & Greiner, P.C.
                 One Centennial Square
                 P.O. Box 3000
                 Haddonfield, NJ 08043-0968

Dated: February 9, 2005.

5

**EXHIBIT A**

## RGAN STANLEY DEAN WITTER

This Agreement is made between Dean Witter Reynolds Inc., a Delaware Corporation, (referred to as "Dean Witter")
_____NANCY S. BANZ_____ (referred to as the "Employee")..

In consideration of Dean Witter's employment and compensation of the Employee as a trainee for a position as an :ount Executive and Dean Witter's incurring of costs of training the Employee in Dean Witter's training program, and other :d and valuable consideration, the parties hereby agree as follows:

### CUSTOMER LISTS AND OTHER CONFIDENTIAL INFORMATION

All records and documents concerning the business and affairs of Dean Witter (hereinafter "Company Records"), and the right to use Company Records, are, and will always be the confidential and exclusive property of Dean Witter. Company Records include, but are not limited to, Dean Witter books and records; holding book or customer book pages; the names, addresses, telephone numbers, and assets and obligations carried in the accounts [commonly called positions"] of Dean Witter's customers; computer software or hardware for use in computer or word processing equipment; all training material forwarded to Employee during the training program including but not limited to books, papers, records, videotapes and recordings; and document or computer programs prepared or generated by the Employee by the use of Company Records. Company Records include the originals and all copies thereof. The Employee's use of Company Records will stop immediately upon the first of the following events to occur: the Employee's (1) voluntary or involuntary resignation, (2) retirement, (3) release, (4) discharge, (5) suspension, or (6) acceptance of other employment.

2   The Employee, during the course of his employment with Dean Witter, will not remove Company Records from the premises of Dean Witter in either original or copied form, except in the ordinary course of conducting business for, and subject to approval by, Dean Witter. The Employee will immediately deliver to Dean Witter, upon acceptance of other employment, at the time of termination of employment, or at any other time upon Dean Witter's request, any Company Records in the Employee's possession or control.

3   The Employee will not at any time assert any claim of ownership or other property interest in any Company Records. The Employee will permit Dean Witter to inspect any materials to be removed from Dean Witter offices when he accepts other employment or when his employment with Dean Witter is terminated.

4   The Employee will not disclose to any person or entity the contents, in whole or in part, of Company Records, except in the ordinary course of conducting business for Dean Witter.

5   Both during and subsequent to the course of his employment with Dean Witter, the Employee will not divulge to any person any information received during the course of his employment concerning the business of the firm and its financial affairs.

### UNFAIR COMPETITION

.1   For a period of one year following termination of employment for any reason, and within a radius of one hundred (100) miles from the Dean Witter office to which the Employee was last assigned, the Employee will not solicit or attempt to solicit, directly or indirectly, any of Dean Witter's customers who were served by or whose names became known to the Employee while in the employ of Dean Witter with respect to securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which Dean Witter or any of its affiliates is engaged.

.2   For a period of one year following termination of employment for any reason, the Employee will not, directly or indirectly, recruit or solicit any employee of Dean Witter for employment with any other organization which does business in securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which Dean Witter or any of its affiliates is engaged.

I.   **RIGHT TO INJUNCTION**

In the event the Employee breaches any of the promises concerning "Customer Lists And Other Confidential Information" or "Unfair Competition" contained in paragraphs 1 and 2 of this Agreement, the Employee acknowledges that Dean Witter's remedy at law for damages will be inadequate and that Dean Witter will be entitled to an injunction to prevent the Employee's prospective or continuing breach and to maintain the status quo pending arbitration as provided in paragraph 9 of this Agreement. Dean Witter's application to a court of law for an injunction will not constitute a waiver by Dean Witter of its right to arbitration as provided in paragraph 9 of this Agreement. The Employee further agrees that any court of law which issues an injunction shall refer any claim for damages to arbitration as provided in paragraph 9 of this Agreement.

L.   **REPAYMENT OF TRAINING COSTS**

In the event of voluntary termination or termination for cause either of which occurs within three years from the date the Employee is assigned a Dean Witter production number, the Employee will pay to Dean Witter the amount of $50,000, representing the expense incurred by Dean Witter in training the Employee. This amount will be reduced by $8,333.33 for each full six-month period Employee is in production at Dean Witter. The above liquidated damages will not constitute liquidated damages for other breaches of this Agreement or losses to Dean Witter.

**HOLD HARMLESS**

The Employee will indemnify and hold Dean Witter harmless against any and all losses or liabilities incurred by Dean Witter as the result of the Employee's breach of any of the promises herein, or due to the Employee's errors, customer account debits, commission deficits, rule violations or violations of Dean Witter's policies during the course of Employee's employment. Employee agrees that DWR shall have the right, without notice, to withhold from any amounts payable, due or held in an account for the Employee, as compensation or otherwise, amount(s) equal to any such losses or liabilities.

**TERMINATION OF EMPLOYMENT**

The Employee's employment by Dean Witter may be terminated by either party at any time with or without cause.

**COMPENSATION**

Provided Employee remains in full-time continuous employment with Dean Witter as an Financial Advisor Trainee, Dean Witter agrees to pay Employee a monthly salary of $ _2,000.—_ during the training period prior to employee's going into production. Employee understands and agrees that this monthly salary covers all hours worked up to sixty hours in one week.

Employee understands and agrees that this salary will be calculated in the following manner:

$_____ hourly rate (first 40 hours)
$_____ time and one-half the hourly rate (hours 41-60 in a week)

Hours worked in excess of sixty (60) in any given workweek (Monday-Sunday) will be compensated at a rate of time and one-half the hourly rate stated above. Employee understands that work in excess of sixty (60) hours per workweek must have prior approval of Employee's branch manager.

Upon entering into production after the initial training program, Employee's compensation shall be paid in accordance with Dean Witter's standard compensation program for Financial Advisor Trainees and Financial Advisors as in effect from time to time.

8. **ENTIRE AGREEMENT**

This writing constitutes the entire agreement of the parties with respect to the subject matter herein. This Agreement may be amended only by a writing signed by both the Employee and Dean Witter.

9. **ARBITRATION**

Any controversy or claim arising out of or relating to this Agreement, or its breach, will be settled by arbitration before either the National Association of Securities Dealers, Inc. or the New York Stock Exchange, Inc., as Dean Witter may elect, in accordance with their respective rules, and judgment upon the award entered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Employee agrees to stipulate, upon request by Dean Witter to expedited hearing procedures for such arbitration. This paragraph will not be deemed a waiver of Dean Witter's right to injunctive relief as provided for in paragraph 3 of this Agreement.

10. **SUCCESSORS**

The benefits and obligations of this Agreement will run to the successors and assigns of Dean Witter.

11. **GOVERNING LAW**

This Agreement will be governed and construed in accordance with the laws of the state where the Employee signs this Agreement, as indicated below.

12. **WAIVER**

Dean Witter's failure to enforce a breach of any covenant of this Agreement will not constitute a waiver of Dean Witter's right to enforce any other breach of the same or any other covenant.

13. **SEVERABILITY**

If any provision of this Agreement is, for any reason, adjudged to be void, invalid or unenforceable by an arbitrator or arbitration panel, a regulatory body or a court of law, the remainder of the Agreement will still continue and remain in full force and effect.

SIGNED IN THE STATE OF _____ _Illinois_

_8-14-00_
Date

_Nancy S Boy_
Employee's Signature

**DEAN WITTER REYNOLDS INC.**

_8-14-00_
Date

Branch Manager's Signature

**EXHIBIT B**

# Morgan Stanley

## Account Distribution Acknowledgment

This Account Distribution Acknowledgement (the "Acknowledgement") is entered into between Morgan Stanley DW Inc. d/b/a Morgan Stanley ("MSDW") and _Nancy   B A J 2_ (the "Employee") on this _25_ day of _Sept_, 20 _03_, for the purpose of assigning to Employee clients, prospective client leads or client accounts which were formerly opened, developed and/or serviced by, or had a prior business relationship with, an employee of MSDW other than Employee. For purposes of this Acknowledgement, MSDW shall include any and all parents, subsidiaries, affiliates, predecessors and successor entities.

Employee understands and agrees that the existing client accounts, relationships and account leads or prospects are a valuable asset of MSDW and their assignment to Employee by MSDW for development and/or servicing is desired by Employee and may result in additional clients or benefits to Employee including but not limited to commissions and the referral of related client accounts; and

Employee further agrees that but for the assignment of the above-referenced client leads, existing clients and accounts and the referral of related clients and accounts to Employee, said leads, clients and accounts would not be available to Employee.

In exchange for participating in an account distribution, Employee further agrees to the conditions set forth in this Acknowledgement as follows:

**1. Assigned Clients and Leads.** During Employee's employment by MSDW as a Financial Advisor, MSDW may assign to the Employee one or more client prospects or leads, clients or client accounts formerly identified, developed, opened, or serviced by a MSDW employee other than the Employee (the "Assigned Clients").

**2. Related Clients.** Assigned Clients may refer new client accounts to the Employee (the "Related Clients"). The Employee acknowledges and agrees that the Related Clients are directly derived from the Assigned Clients.

**3. Confidential and Proprietary Company Information and Records.** It is understood and agreed that all files, papers, memoranda, letters, floppy disks, facsimile, electronic or other communications whether original, duplicated, computerized, memorized, handwritten or in any other form, and all information derived therefrom relating to the business of MSDW and MSDW employees and clients, including but not limited to the names, addresses, telephone, e-mail or any other identifying numbers and financial information of the Assigned Clients and the Related Clients (hereinafter collectively "Confidential and Proprietary Information and Records") are confidential and the sole and exclusive property of MSDW. Employee further agrees that Confidential and Proprietary Information and Records whether provided to Employee by MSDW or by the Assigned Clients or Related Clients is entrusted to Employee as an employee and sales representative of MSDW. Employee agrees that Confidential and Proprietary Information and Records in Employee's possession are and remain the property of MSDW and, as such, are not to be removed from or used outside of any MSDW offices except as authorized by MSDW. In addition, Employee agrees to return immediately all Confidential and Proprietary Information and Records in Employee's possession or control should Employee's employment terminate for any reason and at any time. Employee further agrees not to divulge or disclose Confidential and Proprietary Information and Records or any other confidential information relating to any other client to any person or entity

# Morgan Stanley

outside MSDW including but not limited to a competitor of MSDW either during Employee's employment or at any time thereafter.

**4. Covenant Not to Solicit.** Employee agrees that upon termination of employment from MSDW for any reason and at any time, for a period of one (1) year following such termination of employment, Employee will not solicit directly or indirectly any of the Assigned Clients or Related Clients. Prohibited solicitation includes but is not limited to any contact or communication, of any kind whatsoever, whether made by Employee directly or by another party or person through the use of Company Records or Information provided by Employee, for the purpose of inviting, encouraging or requesting any such account to transfer to Employee's new employer, to open a new account with Employee or Employee's new employer, or to otherwise discontinue or disrupt its existing business relationship with MSDW.

**5. Injunctive Relief.** In the event Employee breaches any of the terms contained in paragraphs 3 and 4 above, Employee agrees that MSDW will suffer immediate and irreparable harm and that money damages will not be adequate to compensate MSDW or to protect the status quo. Accordingly, Employee consents to the issuance of a temporary restraining order or a preliminary or permanent injunction ordering:

(a) Employee immediately to return to MSDW all Confidential and Proprietary Information and Records relating to the Assigned or Related Clients whether original, duplicated, computerized, handwritten, or any other form whatsoever, and enjoining and restraining Employee from using or disclosing any information contained in such records; and

(b) that, for a period of one year, Employee be enjoined and restrained directly or indirectly from soliciting any Assigned or Related Account; and

**6. Arbitration.** Any controversy or claim arising out of or relating to this acknowledgement or its breach, will be settled by arbitration before either the National Association of Securities Dealers, Inc. or the New York Stock Exchange, Inc., as MSDW may elect, in accordance with their respective rules, and judgment upon the award entered by the arbitrator(s) may be entered in any court having jurisdiction thereof. In addition, Employee agrees to stipulate, upon request by MSDW, to expedited hearing procedures for such arbitration. Furthermore, Employee understands and agrees that this paragraph will not be deemed a waiver of MSDW's right to injunctive relief as provided for in paragraph 5 of this Acknowledgement.

**7. Jurisdiction.** For the purpose of paragraph 5, Employee agrees to submit to, and confer jurisdiction on, the United States District Court or the State Court that has original jurisdiction for the judicial district or county in which Employee last worked for MSDW. This Acknowledgement shall be construed, governed by, and enforced in accordance with the laws of said jurisdiction.

**8. Acknowledgments.** This Acknowledgement is intended to supplement any other MSDW confidentiality and unfair competition policy, agreement, contract and covenant to which Employee may be subject. It is not intended, nor should it be construed, to be a modification of or substitution for such other confidentiality or unfair competition policies, agreements, contracts and covenants, or to be a contract of employment. By signing below, Employee acknowledges and agrees that MSDW reserves the right to reassign to another Financial Advisor at any time and for any reason, the accounts of the Assigned Clients and Related Clients, and that Employee has

# Morgan Stanley

read and reviewed this Acknowledgement in its entirety and has been given an opportunity to ask
MSDW questions about it. By signing below, Employee agrees that Employee understands the
provisions of this Acknowledgement and knowingly and freely agrees to its terms.

_____          9-25-03
Financial Advisor/Employee          Date

**Morgan Stanley DW Inc.**

_____          9/25/03
By: Branch Office Manager          Date

## IN THE UNTED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

MORGAN STANLEY DW, INC.,      :
     :
      Plaintiff,      :
     :
v.      :     DOCKET NO.
     :
NANCY BANZ,      :
     :     Civil Action
      Defendant.      :
     :
     :

### VERIFYING AFFIDAVIT OF JEFFREY PRINCE

JEFFREY PRINCE, upon his oath, deposes and says:

1.     I am the Executive Director and Area Manager for the Morgan Stanley DW Inc. ("Morgan Stanley") branch located at 7555 North Knoxville Avenue, Peoria, Illinois, 61614, and the former Morgan Stanley office of convenience located at 321 East Main Street, Streeter, Illinois 61364 (the "Streeter location"). I have personal knowledge of the facts set forth herein.

2.     I have reviewed the allegations of the Complaint filed in this matter and the allegations are true to the best of my knowledge, except where stated on information and belief, in which case I believe them to be true.

3.     I specifically affirm that a copy of Nancy Banz's ("Banz") employment contract with Morgan Stanley is attached to the Complaint as Exhibit "A."



EXHIBIT
C

4.    I specifically affirm that Ms. Banz electronically acknowledged each year that she would abide by Morgan Stanley's Conduct of Code, the relevant terms of which are set forth in the Complaint.

5.    Morgan Stanley trained Ms. Banz to become a financial advisor. She had no prior experience in that position before joining Morgan Stanley.

6.    Ms. Banz was last assigned by Morgan Stanley to the Streeter location.

7.    The Streeter location is what is known in the industry as an "office of convenience." The Streeter location had been owned and operated by a Morgan Stanley financial advisor named Theresa Lukach until Ms. Lukach retired from Morgan Stanley effective April 1, 2003. Ms. Lukach continues to own the Streeter location.

8.    When Ms. Lukach retired from Morgan Stanley under what is known in the industry as a "sunset agreement," the Morgan Stanley accounts that Ms. Lukach had been servicing were all re-assigned to Ms. Banz. In exchange, Ms. Banz agreed, among other things, not to solicit those clients to leave Morgan Stanley if she ever decided to leave herself. A copy of the Account Assignment Acknowledgement between Morgan Stanley and Ms. Banz is attached to the Complaint as Exhibit "B."

9.    Ms. Banz continued to service those Morgan Stanley accounts from the Streeter location. Because we are prohibited from paying rent to a building owner who also receives commission revenues from the firm, Morgan Stanley could not pay the rent directly to Ms. Lukach. As a result, Ms. Banz paid the rent directly for the Streeter location.

10.    As set forth in the Complaint, Ms. Banz voluntarily resigned her employment with Morgan Stanley effective immediately late in the afternoon of Friday, February 4, 2005. A copy of her resignation letter is attached hereto as Exhibit "1."

11.  Immediately following her resignation, my office received a call from LPL Financial Services, indicating that Ms. Banz would be clearing her trades through LPL. LPL acts as a clearing house for brokers with private investment firms.

12.  Since she abruptly resigned from Morgan Stanley on Friday, Ms. Banz has been actively soliciting Morgan Stanley's customers to transfer their accounts to her new firm, including the accounts that she was re-assigned pursuant to the Account Assignment Acknowledgement.

13.  I have learned that Ms. Banz will now be operating her new firm out of the same Streeter location where she worked for Morgan Stanley.

14.  I have personally spoken on the telephone with several Morgan Stanley customers who expressed concern that their accounts may have to move to Ms. Banz's new firm. Clearly, the clients are now very confused by the communications they are receiving from Ms. Banz.

15.  Attached hereto as Exhibit "2" is a copy of a written package mailed by Ms. Banz to one of Morgan Stanley's customers whose account she was servicing for Morgan Stanley. The clients' names and address have been redacted for confidentiality purposes.

JEFFREY PRINCE

Sworn to before me this _6th_ day of February 2005.

_Caryl Carrescia_
Notary Public

"OFFICIAL SEAL"
NOTARY PUBLIC STATE OF ILLINOIS
CARYL CARRESCIA
COMMISSION EXPIRES 04/04/05

1398526v1

# Exhibit 1

February 4, 2005

Jeff Prince
Morgan Stanley
7555 North Knoxville Ave
Peoria IL 61604

Jeff,

Effective immediately, I hereby resign my position as Financial Advisor with Morgan
Stanley.

Sincerely,

Nancy S Banz
PC2379

# Exhibit 2

# LIFESPAN

**NANCY BANZ**
LPL Financial Advisor

## FINANCIAL, Inc.

February 7, 2005

Theresa Lukach
219 Prospect Ave
PO Box 256
Streator, IL 61364

Dear Theresa,

I am pleased to announce that I have joined the firm of LifeSpan Financial, Inc.
My new location and phone number are as follows:

**LifeSpan Financial, Inc.**
**321 East Main Street**
**Streator IL 61364**
**Phone: 815-672-6200**

The individuals at LifeSpan Financial, Inc. are affiliated with the national independent brokerage firm, Linsco/Private Ledger (LPL).

Sincerely,

*Nancy*

Nancy Banz
LPL Financial Advisor

This is for informational purposes only and not a solicitation to buy.