E-FILED
Thursday, 10 February, 2005  10:22:19 AM
Clerk, U.S. District Court, ILCD

**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

FEB - 9 2005

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| MORGAN STANLEY DW INC., | : | |
| Plaintiff, | : | |
| v. | : | DOCKET NO. ___05-1042___ |
| NANCY BANZ, | : | Civil Action |
| Defendant. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
## MOTION FOR A TEMPORARY RESTRAINING ORDER

Plaintiff Morgan Stanley DW, Inc. ("Morgan Stanley") brings this application for a temporary restraining order against one of its former account executives, Nancy Banz ("Banz" or "defendant").

While still employed by Morgan Stanley, Banz improperly confiscated Morgan Stanley's confidential and proprietary customer information and then surprised Morgan Stanley by voluntarily resigning her employment in the late afternoon on Friday, February 4, 2005, going into business for herself, and engaging in a frenzied campaign to have Morgan Stanley's customers transfer their accounts to her new company. On the same day she resigned, Banz sent written mailings to Morgan Stanley's customers and has also engaged in a telephone solicitation campaign. Her confiscation of Morgan Stanley's confidential and proprietary information and her wrongful solicitation of Morgan Stanley's customers are in direct violation of both her

contractual and her legal obligations to Morgan Stanley. These wrongful actions have caused immediate and irreparable harm to Morgan Stanley that cannot be cured by monetary damages. Accordingly, injunctive relief is appropriate.

## I.    FACTS

### A.    THE AGREEMENT

The following facts are taken from plaintiff's Complaint and the Verifying Affidavit of Jeffrey Prince ("Prince Aff.").

On or about August 14, 2000, Defendant commenced employment with Morgan Stanley as an Account Executive. At the commencement of her employment, Defendant executed a standard Financial Advisor Trainee Employment Agreement (the "Agreement"). (Complaint at ¶ 4; Prince Aff. at ¶ 3 and Exhibit "A" thereto). The Agreement specifically provides that Defendant agreed to the restrictions contained therein in consideration of Morgan Stanley's employment and compensation of her as an Account Executive, and for other good and valuable consideration. (Complaint at ¶ 5).

The Agreement also provides that Defendant would not use or disclose Morgan Stanley's confidential information, including the names addresses, and telephone numbers of Morgan Stanley's customers:

#### CUSTOMER LISTS AND OTHER CONFIDENTIAL INFORMATION

1.1    All records and documents concerning the business and affairs of Dean Witter (hereinafter "Company Records"), and the right to use Company Records, are, and will always be the confidential and exclusive property of Dean Witter. Company Records include, but are not limited to, Dean Witter books and records; holding book or customer book pages; the names, addresses, telephone numbers, and assets and obligations carried in the accounts [commonly called "positions"] of Dean Witter's customers; computer software or hardware for use in computer or word processing equipment; all training material forwarded to Employee during the training program including but not limited to books, papers, records, videotapes and recordings; and document or computer programs prepared

2

or generated by the Employee by the use of Company Records. Company
Records include the originals and all copies thereof. The Employee's use
of Company Records will stop immediately upon the first of the following
events to occur: the Employee's (1) voluntary or involuntary resignation,
(2) retirement, (3) release, (4) discharge, (5) suspension, or (6) acceptance
of other employment.

1.2     The Employee, during the course of his employment with Dean Witter,
        will not remove Company Records from the premises of Dean Witter in
        either original or copied form, except in the ordinary course of conducting
        business for, and subject to approval by, Dean Witter. The Employee will
        immediately deliver to Dean Witter, upon acceptance of other
        employment, at the time of termination of employment, or at any other
        time upon Dean Witter's request, any Company Records in the
        Employee's possession or control.

1.3     The Employee will not at any time assert any claim of ownership or other
        property interest in any Company Records. The Employee will permit
        Dean Witter to inspect any materials to be removed from Dean Witter
        offices when she accepts other employment or when his employment with
        Dean Witter is terminated.

1.4     The Employee will not disclose to any person or entity the contents, in
        whole or in part, of Company Records, except in the ordinary course of
        conducting business for Dean Witter.

1.5     Both during and subsequent to the course of his employment with Dean
        Witter, the Employee will not divulge to any person any information
        received during the course of his employment concerning the business of
        the firm and its financial affairs.

(Complaint at ¶ 6 ).

The Agreement further provides that Defendant would not solicit Morgan Stanley's

customers for a period of one year following the termination of her employment with Morgan

Stanley:

### UNFAIR COMPETITION

2.1     For a period of one year following termination of employment for any
        reason, and within a radius of one hundred (100) miles from the Dean
        Witter office to which the Employee was last assigned, the Employee will
        not solicit or attempt to solicit, directly or indirectly, any of Dean Witter's
        customers who were served by or whose names became known to the
        Employee while in the employ of Dean Witter with respect to securities,

3

commodities, financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which Dean Witter or any of its affiliates is engaged.

2.2     For a period of one year following termination of employment for any reason, the Employee will not directly or indirectly, recruit or solicit any employee of Dean Witter for employment with any other organization which does business in securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which Dean Witter or any of its affiliates is engaged.

(Complaint at ¶ 7).

The Agreement further provides for certain remedies in the event of breach, including a

right to injunction:

## RIGHT TO INJUNCTION

3.      In the event the Employee breaches any of the promises concerning "Customer Lists And Other Confidential Information" or "Unfair Competition" contained in paragraphs 1 and 2 of this Agreement, the Employee acknowledges that Dean Witter's remedy at law for damages will be inadequate and that Dean Witter will be entitled to an injunction to prevent the Employee's prospective or continuing breach and to maintain the status quo pending arbitration as provided in paragraph 9 of this Agreement. Dean Witter's application to a court of law for an injunction will not constitute a waiver by Dean Witter of its right to arbitration as provided in paragraph 8 of this Agreement. The Employee further agrees that any court of law which issues an injunction shall refer any claim for damages to arbitration as provided in paragraph 8 of this Agreement.

(Complaint at ¶ 8).

## Morgan Stanley's Code of Conduct

Morgan Stanley distributes copies of its updated Code of Conduct to all account

executives, including defendant, on an annual basis. (Complaint at ¶ 9).

The Code of Conduct defines "proprietary information" as follows:

"Proprietary information" is Firm information not known to the public that may have intrinsic value or that may provide the Firm with a competitive advantage. Proprietary information includes, but is not limited to . . . client lists . . . .

4

(Complaint at ¶ 10).

The Code of Conduct defines "confidential information" as follows:

> "Confidential information" is information that is not generally
> known to the public about MSDW, its clients, its counterparties or
> other parties with which the Firm has a relationship. Like
> proprietary information, confidential information may be present in
> various media and forms.
>
> Examples of confidential information concerning the Firm and its
> employees, clients, counterparties include, but are not limited to:
>
> - personal information;
> - financial information;
>
>        * * *
>
> - identities of clients or counterparties of MSDW;
> - existence and terms of agreements with clients or counterparties; or
> - programs and materials on the Firm's information systems.

(Complaint at ¶ 11).

The Code of Conduct contains the following restrictions on the use and/or disclosure of

Morgan Stanley's confidential business information:

> Do not remove proprietary or confidential from Firm premises
> unless absolutely necessary. The Firm reserves the right to deny
> you permission to remove any proprietary or confidential
> information from Firm premises. If you take such information out
> of the office for business purposes, keep it on your person or in a
> secure place at all times and return it promptly to Firm premises.

(Complaint at ¶ 12).

The Code of Conduct also contains the following additional restrictions on the use and/or

disclosure of Morgan Stanley's confidential business information:

> Do not disclose proprietary or confidential information to any
> person outside MSDW (including family members), or use it or
> permit any third party to use it without first obtaining Law or
> Compliance approval.

(Complaint at ¶ 13).

The Code of Conduct also expressly restricts the post-employment use of Morgan

Stanley's confidential and proprietary information:

> You may not disclose proprietary or confidential information,
> including intellectual property, of the Firm or its employees,
> clients or counterparties when seeking employment outside of
> MSDW or after termination. You may not take such proprietary or
> confidential information when leaving MSDW or use or disclose
> such information for your personal benefit or for the benefit of
> your new employer or prospective new employer. You may not
> permit its disclosure or use by any third party.

(Complaint at ¶ 14).

The Code of Conduct expressly advises Morgan Stanley's employees that Morgan

Stanley will vigorously enforce its rights against those current and former employees that use

and/or disclose Morgan Stanley's confidential or proprietary business information:

> MSDW will vigorously enforce its rights against current and
> former employees who improperly take, disclose or use proprietary
> or confidential information, or who permit others to do the same. . .

(Complaint at ¶ 15).

Defendant has acknowledged the terms of the Code of Conduct on an annual basis by

affixing her electronic signature to the updated versions of the Code of Conduct on her Morgan

Stanley computer terminals. (Complaint at ¶ 16; Prince Aff. at ¶ 4).

Thus, throughout her employment with Morgan Stanley, Defendant was well aware - -

and acknowledged in writing - - that client account information and client lists were confidential

and proprietary information of Morgan Stanley. (Complaint at ¶ 17).

## B.   THE ACCOUNT DISTRIBUTION ACKNOWLEDGEMENT

Many of the customer accounts for which Banz was responsible for handling were

assigned to her as a result of the retirement of Theresa Lukach, a former financial advisor with

6

Morgan Stanley. The Morgan Stanley accounts that Ms. Lukach had been servicing were all re-assigned to Banz. In exchange, Banz agreed, among other things, not to solicit those clients upon the termination of her employment with Morgan Stanley. (Complaint at ¶ 18 and Exhibit "B" thereto).

## C.    DEFENDANT'S ACCESS TO CONFIDENTIAL INFORMATION OF MORGAN STANLEY

During the course of her employment with Morgan Stanley, defendant had access to and became familiar with various confidential and proprietary information of Morgan Stanley, such as the identity and addresses of Morgan Stanley's customers, their specific past and future needs, their investment plans, portfolio information, and other various forms of confidential information. This information was disclosed to defendant in the course of her employment with Morgan Stanley to enable her to perform her job effectively. Defendant was advised both orally and in writing that such confidential business information, including customer identities and addresses, were considered highly confidential information by Morgan Stanley and that such information could not be used or disclosed by defendant except in her capacity as Morgan Stanley employees. (Complaint at ¶¶ 19 and 20).

Morgan Stanley has taken reasonable precautions to protect the confidentiality of its customer records and information, including, but not limited to, restricting access to customer records to the Account Executive and sales assistant servicing the particular account, requiring Account Executives to sign agreements such as those signed by defendant. (Complaint at ¶ 21). Defendant signed this agreement at the commencement of her employment.

During Banz's employment with Morgan Stanley, Morgan Stanley expended considerable resources to retain her as an Account Executive, registering her and/or renewing her registration with the New York Stock Exchange, National Association of Securities Dealers,

7

American Stock Exchange, and various securities commissions; compensating her and providing her with full benefits and support; and giving her access to Morgan Stanley's customer accounts. (Complaint at ¶ 22).

Morgan Stanley assigned Banz to service certain of Morgan Stanley's customers out of both its Peoria, Illinois branch and its office of convenience in Streeter, Illinois. Banz was assigned to service approximately 935 such accounts, which contain approximately $56 million in assets. These accounts generated over $200,000 in commissions for Morgan Stanley in the last fiscal year. (Complaint at ¶ 23).

## D. DEFENDANT'S RESIGNATION AND CONTRACT VIOLATIONS

Without any prior warning to Morgan Stanley, defendant resigned her employment with Morgan Stanley, effective immediately in the late afternoon of Friday, February 4, 2005. Morgan Stanley's Peoria office received a call later that same day from LPL advising that defendant would be clearing her trades through LPL. (Complaint at ¶¶ 24 and 25).

After she abruptly resigned from Morgan Stanley on Friday, defendant actively began soliciting Morgan Stanley's customers to transfer their accounts to her new firm and has been working out of the same office where she worked for Morgan Stanley (Complaint at ¶ 26). Banz also sent these customers written information about her new firm in an obvious attempt to solicit their business for her new company. (Complaint at ¶ 28, Prince Aff at Exhibit "2" thereto). Following these solicitations, Morgan Stanley has received telephone calls from numerous customers who have been confused by her solicitations and who wrongfully think they have to transfer their accounts away from Morgan Stanley. (Complaint at ¶ 27; Prince Aff. at ¶ 14).

As these documents show, confidential information obtained by defendant from Morgan Stanley has been unlawfully divulged, disclosed and/or used by defendant for her benefit and for the benefit of her new firm. If defendant continues to use Morgan Stanley's confidential and

8

proprietary customer information to wrongfully solicit Morgan Stanley's customers whose accounts she did not directly and personally service, she will cause great and irreparable harm to Morgan Stanley that cannot be adequately measured by monetary damages.

## II.   ARGUMENT

### A.   MORGAN STANLEY IS ENTITLED TO INJUNCTIVE RELIEF

Hundreds, if not thousands, of federal and state courts have granted securities firms injunctive relief under virtually identical circumstances, including Judge Gottschall in Dean Witter v. Greenbaum, No. 01 C 477 (N.D. Ill. January 24, 2001) (Exhibit "1"); Judge Hibbler in Dean Witter v. Spillane, No. 00 C 7595 (N.D. Ill. December 6, 2000) (Exhibit "2"); and Judge Rosemond in Dean Witter Reynolds, Inc. v. Semersky, No. 99 C 6302 (N.D. Ill. September 24, 1999) (Exhibit "3"). The facts of the cited cases mirror those presented here as they involved the same plaintiff, the virtually identical non-solicitation provision, and largely the same course of conduct by the defendant (i.e. telephone calls and direct mailings to Morgan Stanley customers). See other Illinois decisions including: Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curry et al, No. 00C2351 (N.D. Ill, April 19, 2000) (Exhibit "4"); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Maniscalco, No. 98C8185 (N.D. Ill, December 22, 1998) (Exhibit "5"); Prudential Securities v. McDermott, No. 98C4286 (N.D. Ill, July 14, 1998) (Exhibit "6"); Prudential Securities v. Ramachandraiyer, No. 98C1467 (N.D. Ill, March 11, 1998) (Exhibit "7"); Merrill Lynch v. Iorri, No. 94C7402 (N.D. Ill., Dec. 13, 1994) (Exhibit "8"); Merrill Lynch v. Patinkin, No. 91C2324 (N.D. Ill., Apr. 19, 1991) (Exhibit "9"); Merrill Lynch v. Romano, No. 91C2432 (N.D. Ill. Apr. 25, 1991) (Exhibit "10"); Merrill Lynch v. Otzko, No. 91C3400 (N.D. Ill., June 14, 1991) (Exhibit "11"); Merrill Lynch v. Summers, No. 91C8231 (N.D. Ill., Dec. 23, 1991); (Exhibit "12") Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cunningham, 736 F. Supp. 887

9

(N.D. Ill. 1990) (Exhibit "13"); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Tobias, No. 90C20210 (N.D. Ill., July 17, 1990) (Exhibit "14"); Merrill Lynch v. Rosenbaum, No. 90C5031 (N.D. Ill., Sept. 4, 1990) (Exhibit "15").

Furthermore, courts in other districts in the Seventh Circuit have also consistently granted securities firms injunctive relief under identical circumstances as presented here: Judge Curran in Morgan Stanley DW Inc. v. Wutz, et al, No. 01-C-469 (E.D. Wisc. May 14, 2001) (Exhibit "16").

Issuance of an injunction is proper here because Morgan Stanley has demonstrated (i) a reasonable likelihood of success on the merits; (ii) that there is no adequate remedy at law; (iii) a substantial threat of immediate and irreparable harm; (iv) that greater injury will result from denial of the injunction than from it being granted; and (v) that an injunction will not disserve the public interest. Brunswick Corp. v. Jones, 784 F.2d 271 (7th Cir. 1986).

## 1. Morgan Stanley Will Likely Succeed On The Merits Because Defendant Openly Breached Her Agreement With Morgan Stanley.

Morgan Stanley's right to relief is clearly set forth in the express language of the Agreement, which contains the express written promise not to (i) confiscate Morgan Stanley's customer records and information, (ii) solicit (for one year) the clients defendant serviced or whose names he learned of while employed by Morgan Stanley, and (iii) solicit (for one year) Morgan Stanley's employees. Morgan Stanley's right to relief is also set forth in the Code of Conduct and Account Assignment Acknowledgment.

### a. Defendant's Wrongdoing and Contractual Breaches

Defendant resigned from Morgan Stanley on Friday, February 4, 2005, and immediately began soliciting Morgan Stanley clients to move their accounts to her new firm. Even though it has only been a few days since her resignation, the evidence already gathered demonstrates that:

10

a.    defendant provided the names, addresses, telephone numbers and confidential account information about Morgan Stanley customers to her new firm;

b.    defendant took that information and used it to send letters to Morgan Stanley's clients the moment she resigned from Morgan Stanely;

c.    that the defendant is apparently still using Morgan Stanley documentation and information;

d.    that the defendant has called Morgan Stanley customers soliciting them to move their accounts to her new firm; and

e.    that defendant has successfully confused a number of Morgan Stanley's customers into believing that they have to transfer their accounts way from Morgan Stanley to defendants' new firm.

See affidavit of Jeffrey Prince submitted herewith.

**b.    Case Law Supporting Morgan Stanley's Assertions**

Defendant may try to argue that, even though she used Morgan Stanley's information to write to its customers, she only sent an "announcement," not a solicitation. The records also shows, however, that she has also directly solicited those same customers via telephone. In Merrill Lynch, Pierce, Fenner & Smith Incorporated v. Chung, 2001 WL 283083 (C.D. Cal., Feb. 2, 2001) (Exhibit "18"), Judge Marshall of the Central District of California dealt with this exact issue and found that a broker's follow-up telephone conversations after mailing mere "announcement cards" amounted to solicitation in violation of the broker's agreement. Id., p. 11:

> Merrill Lynch alleged that Defendant personally telephoned Merrill Lynch customers to engage them in conversations concerning the products and services offered by their new employer and to otherwise solicit Merrill Lynch customers to transfer their accounts to them at Smith Barney. Merrill Lynch argued that Defendant's use of the telephone inherently crosses over from mere announcement to direct or indirect solicitation; and Merrill Lynch noted that the context of a phone call cannot be verified as a written statement can and, this therefore, opens up the door for potential abuse. Id. at 9.

11

* * *

> Defendants argued that their conduct was proper because their communication with Merrill Lynch clients complied with California law that allows a former employee to notify customers when he switches employment as long as the notice does not constitute a solicitation.   Defendants claims [sic] that their telephone conversations adhered to this aspect of California law and that any discussion that may have followed regarding their new firm was initiated by clients. Id. at 9.

* * *

> Defendants' mailing of the written announcements alone did not constitute solicitation under California law. However, **defendants did solicit Merrill Lynch customers by placing direct and personal follow-up calls to Merrill Lynch customers**. Id. at 11. (Emphasis added).

Here, just like in Chung, defendant sent announcement letters to Morgan Stanley's customers and then followed up with specific solicitous telephone calls.   Although the "announcement letter" contains the self-serving note on the bottom that it is "not a solicitation," it is difficult to view it as anything other than a solicitation.   When viewed in conjunction with the telephone calls, it is evident that defendant's actions constitute a clear villation of her contractual obligations.

In Merrill Lynch v. Bradley, 756 F.2d 1048, 1054 (4th Cir. 1985), the United States Court of Appeals for the Fourth Circuit held in a substantially similar case that immediate injunctive relief is necessary to avoid irreparable harm and to maintain the status quo:

> When an account executive breaches his employment contract by soliciting his former employer's customers, a non-solicitation clause requires immediate application to have any effect.   An injunction even a few days after solicitation has begun is unsatisfactory because the damage is done. The customers cannot be "unsolicited."

12

The Fifth Circuit echoed the sentiments of the Fourth Circuit, emphasizing that, absent injunctive relief, an employer's trade secrets "could be lost before a full trial on the merits could be held." FMC v. Varco, 677 F.2d 500, 504 (5th Cir. 1982).

### c.    Morgan Stanley Maintains a Clear Right to Relief.

Morgan Stanley's right to relief is clear and well documented as set forth in the language of the Agreement, Code of Conduct and Account Assignment Acknowledgment. Importantly, these agreements are substantially similar to the agreement enforced by the District Courts of Illinois in Greenbaum, Spillane, and Semersky, and in virtually every other Circuit Court in the country.

These restrictions as to customer and employee solicitation are clearly enforceable under Illinois law. PCX Corp. v. Ross, 168 Ill.App.3d 1047, 522 N.E.2d 1333, 1339 (1st Dist. 1988) (citations omitted). See also, Abel v. Fox, 274 Ill. App.3d 811, 654 N.E.2d 591 (4th Dist. 1995) (Post-employment restrictive covenant is enforceable if it is reasonable in geographic and temporal scope and is necessary to protect legitimate business interest of employer); Gillespie v. Carbondale and Marion Eye Centers, 351 Ill. App.3d 625, 622 N.E.2d 1267.

In addition to the Greenbaum, Spillane, and Semersky cases (discussed above) where Illinois district courts enforced non-compete provisions identical to the provision at issue in this case, courts in Illinois and throughout the country have routinely enjoined individuals similarly situated to defendant from soliciting account transfers from customers in violation of employment agreements. In Outsource International v. Barton, 192 F.3d 662 (7th Cir. 1999), the Court affirmed the entry of a temporary restraining order arising out of violations of confidentiality and non-compete clauses in an employment agreement. The Court noted with approval that "[a] restrictive covenant may be enforced if the employee learned trade secrets or

13

other confidential information while in plaintiff's employ and subsequently attempted to use it for his or her own benefit." Springfield Rare Coin Galleries, Inc. v. Mileham, 250 Ill. App. 3d 922 (Ill. App. Ct. 1993). This is precisely what has happened here.

Similarly, in IDS Financial Services v. Smithson, 843 F. Supp. 415, 419 (N.D. Ill. 1994), Judge Norgle granted a temporary restraining order where a financial planner (similar to defendant) left one employer and immediately began to solicit clients at his new position. Moreover, non-compete agreements with the same geographic and temporal limitations have been enforced with restraining orders. See Wells v. Merrill Lynch, Pierce Fenner and Smith, 919 F. Supp. 1047 (E.D. Ky. 1994) and Merrill Lynch, Pierce Fenner and Smith v. Grall, 836 F. Supp. 428 (W.D. Mich. 1993). Importantly here, Morgan Stanley does not seek to bar defendant from earning a living as a stockbroker, even though doing so will directly compete with Morgan Stanley in the same community. Morgan Stanley seeks only to enjoin defendant from soliciting Morgan Stanley customers, a condition to which she specifically and repeatedly agreed in her Agreement, the Code of Conduct, and the Account Assignment Acknowledgment.

### d.    Morgan Stanley's Customer List is Entitled to Trade Secret Status.

Even in the absence of an express contract, injunctive relief is appropriate to protect Morgan Stanley's trade secret customer list. The Restatement of the Law of Torts, § 757(b), defines trade secrets to specifically include customer lists:

> A trade secret may consist of any... compilation of information which is used in one's business, and which gives her an opportunity to obtain an advantage over competitors who do not know or use it. It may be... a list of customers. (Emphasis added.)

Consistent with the Restatement, courts have repeatedly afforded securities firm's customer lists trade secret status. See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kramer, 816 F.Supp. 1242 (N.D. Ohio 1992); Ruscitto v. Merrill Lynch, Pierce, Fenner &

14

Smith, Inc., 777 F.Supp. 1349, 1354 (N.D. Tex.), aff'd 948 F.2d 1286 (5th Cir. 1991), cert. denied, 112 S.Ct. 1994 (1992); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Feeney, No. 90-5085 (N.Y. Sup. Ct., Oct. 18, 1990) (New York Supreme Court granted Merrill Lynch injunctive relief, holding that Merrill Lynch's customer list is a trade secret); Orbach v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 1994 WL 900431 (E.D. Mich., Jan. 11, 1994); Merrill Lynch v. Hagerty, 808 F.Supp. 1555 (S.D. Fla. 1992), aff'd 2 F.3d 405 (11th Cir. 1993) (court granted injunctive relief to protect "goodwill and trade secrets" of Merrill Lynch).

Defendant's efforts to convert Morgan Stanley's confidential and proprietary information, including customer lists and other "trade secrets," contravene the Illinois Trade Secrets Act ("ITSA"). In Illinois, a "trade secret" includes:

[a]    list of actual or potential customers or suppliers, that:

(1)    is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and

(2)    is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

Emphasis added. 765 ILCS 1065/2 (West 1997) (formerly Ill. Rev. Stat. 1991 ch. 140, par. 352)

Pursuant to ITSA, courts in Illinois have held that customer lists are protectable trade secrets, even absent a restrictive covenant. See, e.g., Stampede Tool Warehouse, Inc. v. May, 272 Ill. App.3d 580, 651 N.E.2d 209 (1995); Elmer Miller, Inc. v. Landis, 253 Ill. App.3d 129, 625 N.E.2d 338 (1993).

Here, Morgan Stanley's customer list has been developed at the substantial time and expense of Morgan Stanley. This information is not disclosed to the public and is only disclosed to employees after an Employment Agreement containing a non-disclosure and non-solicitation

15

agreement is signed. If defendant refused to sign the Employment Agreement, she would not have been afforded access to this information. Defendant's knowledge of Morgan Stanley's client list was gained solely through the course of her employment and is governed by her executed Employment Agreement.

Generally, federal courts have granted and upheld injunctive relief pending arbitration in cases involving a contractual consent to such injunctive relief. See, Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton, 844 F.2d at 727-728 ("first, plaintiff is entitled by the employment contract to entry of orders protecting the status quo...the entry of the temporary restraining order was appropriate"); RGI v. Tucker, 858 F.2d 227, 230 (5th Cir. 1988) (Fifth Circuit held that "where the party's contract provides for injunctive relief pending arbitration...the court need not involve itself in balancing the various factors...it was appropriate for the district court to issue the preliminary injunction to ensure that the arbitration clause of the contract will be carried out as written").

In short, injunctive relief is appropriate both to enforce the terms of defendant's Agreement, including the express consent to a temporary restraining order and preliminary injunctive relief and to protect against the misappropriation of Morgan Stanley's trade secret information.

The case law and statute provide clear precedent that Morgan Stanley's records, information and client lists qualify as trade secrets. Morgan Stanley has taken extensive security measures to preserve and protect the confidentiality of its customer records. The names, identities, trading histories, and other pertinent characteristics of Morgan Stanley's customers are not readily available or ascertainable by the general public or a competitor, but rather could be

learned and acquired only by the unlawful conduct of defendant in unlawfully copying, converting, stealing and utilizing the information to solicit Morgan Stanley employees.

### 2.    Morgan Stanley Has No Adequate Remedy at Law.

Absent immediate injunctive relief, Morgan Stanley will suffer irreparable harm on at least two separate and distinct levels. First, unless injunctive relief is granted, it will be impossible to measure Morgan Stanley's damages with any reasonable degree of certainty. In Merrill Lynch v. Stidham, 658 F.2d 1098 (5th Cir. 1981), for example, the Fifth Circuit held under identical circumstances that the misappropriation of Merrill Lynch's trade secrets caused irreparable harm to Merrill Lynch, ruling as follows:

> The injury here is such that damages could not adequately compensate. Were defendant permitted by the law to exploit the clientele of his former employers, every investment that reasonably flowed from the exploitation should be included in the damages award. How such a figure could be arrived at escapes us. Id. at 1102 (emphasis added).

Similarly, in Merrill Lynch v. Bradley, 756 F.2d 1048 (4th Cir. 1985), the Fourth Circuit reached the identical result, expressly holding that Merrill Lynch "faced irreparable non-compensable harm in the loss of its customers." Id. See also, Merrill Lynch v. Brambilia, No. 92-347-2-MAC(DF), p.10 (M.D. GA., Sept. 11, 1992):

> The court cannot adequately compute the total injury suffered by Merrill Lynch as a result of the loss of its client list... It is impossible for this court, or any other adjudicative body, to determine the life-time value of a particular client or account at a given moment in time. Who can say what the value of a particular account will be over the course of 5, 10, 20, even 30 years...This is precisely the type of situation that is ripe for injunctive relief. (Emphasis added.)

17

Similarly, in <u>Basicomputer Corporation</u> v. <u>Scott</u>, 973 F.2d 507 (6th Cir. 1992), the Sixth

Circuit emphasized that an employee's violation of a restrictive covenant or misappropriation of

confidential customer information causes irreparable harm to the employer:

> <u>The loss of customer goodwill often amounts to irreparable injury</u>
> <u>because the damages flowing from such losses are difficult to</u>
> <u>compute. [citation omitted]. Similarly, the loss of fair competition</u>
> <u>that results from the breach of a noncompetition covenant is likely</u>
> <u>to irreparably harm an employer.</u>
>
> [T]he record contains ample evidence to support the court's
> findings that the Defendant had access to confidential customer
> information at Basic, that he removed much of this information
> when he left Basic for Sears, and that he promptly began
> contacting Basic's customers after arriving at Sears. In addition,
> the Defendant had access to Basic's pricing information and could
> use that information to underbid Basic. These facts are sufficient
> to support a finding that Basic would suffer competitive injury and
> loss of customer goodwill from the Defendant's alleged breach of
> his covenants. <u>Since competitive injuries and loss of goodwill are</u>
> <u>difficult to quantify, the court did not err in finding that Basic</u>
> <u>would suffer irreparable harm in the absence of an injunction.</u> <u>Id.</u>
> at 510-512. (Emphasis added.)

Prior to defendant's recent resignation, she serviced roughly 935 Morgan Stanley

accounts, representing almost $56 million in assets under Morgan Stanley management, and

which generated approximately $200,000 in commission revenues for Morgan Stanley in the past

fiscal year alone. It is impossible to determine with any degree of certainty the commissions

each of these clients will generate not only this year but 5, 10 or 30 years into the future. <u>See,</u>

<u>e.g.</u>, <u>Hagerty</u>, 808 F.Supp. at 1558-60 (describing expert testimony demonstrating the

incalculability and speculative nature of damages in this context). Accordingly, defendant's

breach of the Agreement and the Account Assignment Acknowledgement and unlawful

misappropriation of Morgan Stanley's trade secrets has burdened and will continue to burden

Morgan Stanley with financial loss which is incapable of measurement, requiring the immediate issuance of an injunction to protect Morgan Stanley from irreparable harm.

Second, in addition to the fact that Morgan Stanley's damages are impossible to determine with any degree of certainty, irreparable harm also lies in the fact that Morgan Stanley clients expect their financial information, market transactions, and investment assets to be known only to themselves, Morgan Stanley, and Morgan Stanley employees. According to In Re: Rosenbaum Grain Corp., 103 F.2d 656 (7th Cir. 1939), Morgan Stanley acts as an agent and fiduciary to its customers. If defendant is permitted to continue her conduct, each client's sensitive financial information will lose its confidentiality. In Merrill Lynch v. Hess, No. 88-0160 (U.S.D.C., M.D. PA., Feb. 19, 1988), the court granted similar, though more restrictive, injunctive relief as requested by Morgan Stanley here in order to prevent a breach of the confidentiality of Merrill Lynch's customer records:

> Not only might Hess's actions affect employees of Merrill Lynch, but also, and more importantly, Merrill Lynch clients are affected by the loss of confidentiality of his records. Thus, clients lost trust and confidence in Merrill Lynch, which trust and confidence is one of the trademarks of Merrill Lynch. In our view, this type of damage is incalculable.

Here, the general public (or a stranger) could not obtain the information which defendant misappropriated from Morgan Stanley at the time of his departure. While a Streeter, or Chicago, or Peoria telephone book is certainly available, a list of the specific people who maintain accounts and engage in securities transactions at Morgan Stanley cannot be secured except through the use of Morgan Stanley documents, information and trade secrets. Moreover, the information within defendant's possession may include the income, net worth, trading histories, financial acumen, and risk tolerance of innumerable Morgan Stanley clients.

Importantly, Morgan Stanley assisted defendant to develop her client contacts, fostered the relationships, helped defendant maintain close relationships with her Morgan Stanley customers, and even reassigned client relationships to defendant. Moreover, many of the clients solicited were developed by other Morgan Stanley brokers. The personal contact entrusted to defendant, and her breach of that trust, is exactly what the court should protect. As a result, a temporary restraining order is necessary to protect Morgan Stanley's customer interests. Morgan Stanley seeks only to enjoin defendant from soliciting Morgan Stanley customers, a condition to which she specifically agreed. See e.g., Merrill Lynch v. Bradley, 756 F.2d 1048, 1052 (4th Cir. 1985); Merrill Lynch v. Grall, 836 F. Supp. at 434.[1]

In sum, Morgan Stanley faces significant irreparable harm on numerous levels, all of which necessitate the issuance of immediate injunctive relief.

### 3. The Benefits Of Granting Injunctive Relief Outweigh Denial And Injunctive Relief Serves the Public Interest.

The benefits of injunctive relief to Morgan Stanley far outweigh any detriment to defendant. On the one hand, an injunction would protect Morgan Stanley's goodwill, business reputation, trade secrets, methods of business operation, and contract rights. Most importantly, however, an injunction would protect Morgan Stanley's highly sought after client lists and the confidentiality of Morgan Stanley's clients' records.

---

[1] See also Teradyne Inc. v. Mostek Corp., 797 F.2d 43 (1st Cir. 1986); Blumenthal v. Merrill Lynch, 910 F.2d 1049, 1053 (2nd Cir. 1990); Roso-Lino Beverage Distrib. v. Coca-Cola Bottling Co., 749 F.2d 124 (2nd Cir. 1984); Connecticut Resources Recovery Auth. v. Occidental Pet. Corp., 705 F.2d 31, 35 (2nd Cir. 1983); Ortho Pharm Corp. v. Amgen, Inc., 887 F.2d 460 (3rd Cir. 1989); Merrill Lynch v. Bradley, 756 F.2d 1048, 1050 (4th Cir. 1985); RGI, Inc. v. Tucker & Assoc., 858 F.2d 227 (5th Cir. 1988); Performance Unlimited v. Questar Pub, 52 F.3d 1373 (6th Cir. 1995); Merrill Lynch v. Salvano, 999 F.2d 211 (7th Cir. 1993); Sauer-Getriebe KG v. White Hydraulics, 715 F.2d 348 (7th Cir. 1983), cert. denied, 364 U.S. 1070 (1984); Peabody Coalsales v. Tampa Electric, 36 F.3d 46, 48 (8th Cir. 1994); PMS Distrib. Co. v. Huber, 863 F.2d 639 (9th Cir. 1988); Merrill Lynch v. Dutton, 844 F.2d 726 (10th Cir. 1988); Merrill Lynch v. Hagerty, 808 F.Supp. 1555 (S.D. Fla. 1992) aff'd., 2 F.3d 405 (11th Cir. 1993).

By contrast, defendant has deliberately breached her contractual/legal commitments and has misappropriated Morgan Stanley's trade secrets. In fact, in Merrill Lynch v. Cooper, No. 91-163L (U.S.D.C., D.R.I. 1991), the United States District Court for the District of Rhode Island described a similar theft of Merrill Lynch's trade secrets and breaches of Merrill Lynch's contractual rights by a former Merrill Lynch employee as "egregious" and "piracy." Just as in Cooper, defendant's deliberate breach of her Morgan Stanley agreement is "egregious" and nothing short of "piracy."

## B.    THE ARBITRATION RULES REQUIRE MORGAN STANLEY TO SEEK A TRO BEFORE A COURT OF COMPETENT JURISDICTION

Even though this dispute will ultimately be resolved in arbitration before the National Association of Securities Dealers, Morgan Stanley is entitled to injunctive relief pending the outcome in arbitration. This is an express holding not only of the Seventh Circuit Court of Appeals in Sauer-Getriebe KG v. White Hydraulics, 715 F.2d 348 (7th Cir. 1983), but also of the First, Second, Third, Fourth, Fifth, Sixth, Ninth, Tenth and Eleventh Circuit Courts of Appeal.

**As part of her Agreement, defendant expressly agreed to the issuance of injunctive relief in court to prohibit future breaches.** Injunctive relief should be granted, and the parties should resolve the merits of her dispute in arbitration.

Defendant, by virtue of her membership in and registration with the NASD and Morgan Stanley, is obligated to arbitrate any disputes arising out of her employment or termination of employment with Morgan Stanley in accordance with the NASD Code of Arbitration Procedure. However, Morgan Stanley needs immediate protection from the Court, which is specifically authorized under section 10335 of the NASD Code to issue such relief. In particular, section 10335 provides that a party must seek injunctive relief in court pending a hearing on the merits before a panel of NASD arbitrators as follows:

21

> [P]arties may seek a temporary injunctive order, as defined in
> paragraph (a)(2) of this Rule, from a court of competent
> jurisdiction...[2]

Pursuant to section 10335 of the NASD Code, Morgan Stanley is filing its claim for injunctive

relief with the NASD and has simultaneously applied to this Court for temporary injunctive relief

pending further proceedings in arbitration.

The facts in Greenbaum, Spillane and Semersky are strikingly similar. In each case,

former employees left the employ of plaintiffs in those cases, copied confidential customer

records, including customers' names and addresses, immediately took inducements and

commenced employment with competitors, and used confiscated customer information to solicit

accounts for his new employers. In Bradley, the Fourth Circuit expressly held as follows:

> The arbitration process would be a hollow formality where the
> arbitral award when rendered could not return the parties to the
> status quo ante.... When an account executive breaches his
> employment contract by soliciting his former employer's
> customers, a non-solicitation clause requires immediate application
> to has any effect. An injunction even a few days after solicitation
> has begun is unsatisfactory, because the damage is done. The
> customers cannot be "unsolicited." It may be impossible for the
> arbitration award to return the parties to the status quo ante
> because the prevailing parties' damages may be too speculative.

756 F.2d at 1053-1054. (Emphasis added.) The foregoing cases represent compelling judicial

precedent and explicit contractual authority in support of the fact that Morgan Stanley is entitled

to injunctive restraints pending arbitration to prevent arbitration from being rendered a "hollow

formality" and to preserve the "meaningfulness of the arbitration." Id.

---

[2] Until 2002, parties had the option of seeking injunctive relief from either a court or through the arbitration process. The new rule, requiring that parties seek injunctive relief from only a court, became effective on March 25, 2002.

## III.    CONCLUSION

For the reasons stated above, Morgan Stanley has shown a likelihood of success on the merits, that it will suffer irreparable harm, that it is without an adequate remedy at law, that the equities lie in its favor and that public interest is served by an injunction. Accordingly, Morgan Stanley respectfully requests temporary injunctive relief pending the outcome of arbitration held in accordance with Rule 10335 of the National Association of Securities Dealers Code of Arbitration Procedure.

Respectfully submitted,

Attorneys for Plaintiff

Dated: February 9, 2005                By: _____

James R. Morrison, Esquire, Local Counsel
Westervelt, Johnson, Nicoll and Keller, LLC
411 Hamilton Boulevard, 14th Floor
Peoria, Illinois 61602

Mark J. Oberstaedt, Esquire, Lead Counsel
Christopher P. Dolotosky, Esquire
Archer & Greiner
A Professional Corporation
One Centennial Square
P.O. Box 3000
Haddonfield, NJ 08033-0968
(856) 795-2121

1437265v1

23

## CERTIFICATE

The undersigned certifies pursuant to Local Rule 7-1(B) and (D)(2) that relying on the word

and character count of Microsoft Word, the word processing software used to prepare this

document, this document contains 6,556 words and 43,220 characters with spaces.


James R. Morrison

**EXHIBIT 1**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

DEAN WITTER REYNOLDS, INC.,
a Delaware corporation,

Plaintiff,

vi.

MARK W. GREENBAUM,

Defendant.

)
)
)
)
)
)
)
)
)
)
)

Case No. 00 C 4075

## TEMPORARY RESTRAINING ORDER

This matter having come before the Court, upon consideration of the verified complaint for injunctive relief, plaintiff's motion for a temporary restraining order and brief, and pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Court grants the Motion for Temporary Restraining Order.

1.    Plaintiff, Dean Witter Reynolds, Inc. ("Dean Witter"), will suffer irreparable harm and loss if defendant is permitted to (a) convert the property of Dean Witter to defendant's own personal use and benefit, and that of defendant's new employer, and (b) solicit Dean Witter accounts, clients and customers;

2.    Plaintiff has no adequate remedy at law;

3.    Greater injury will be inflicted upon plaintiff by the denial of temporary injunctive relief than would be inflicted upon defendant by the granting of such relief;

4.    The public interest favors the granting of temporary injunctive relief, and temporary injunctive relief will preserve the status quo;

LS0607-1

5. Notice to defendant is likely to result in plaintiff suffering further injury; and

6. Immediate and irreparable injury will result to the plaintiff before the defendant can be heard in opposition to this motion for temporary relief.

It is ordered that defendant temporarily be enjoined and restrained directly or indirectly, and whether alone or in concern with others, until arbitration hearing and thereafter, from:

A. using, disclosing, or transmitting any or all property of Dean Witter including, but not limited to, proprietary software, customer records, holding pages, account statements or other information obtained during his employment with Dean Witter whether in the form of hard copy or in the form of information stored on a computer hard drive or disk, including the names, addresses, and financial information of any Dean Witter customers;

B. ~~contacting,~~ soliciting, ~~or transacting business with or otherwise communicating in any manner or by any medium with~~ any customer of Dean Witter; and

C. accepting any business from any customers defendant serviced while employed at Dean Witter or whose name(s) became known to defendant while defendant was employed at Dean Witter.

It is further ordered that the defendant respond on or before Friday, January ~~26~~ 31, 2001, to the expedited discovery requests submitted by Dean Witter and that defendant submit to deposition on ~~January 29, 2001.~~ *or before Feb. 2, 2001.*

*D. Defendant is to return all property of Dean Witter as described in ¶ A and*

*by close of business Friday Jan 21*

FEB. 8. 2005 5:22PM    HERTZ SCHRAM SANBORN          +856 795 0574        T-046  P.006    F-315

It is ordered that plaintiff ~~need not post security inasmuch as defendant will not~~ post a bond in the amount of $10,000 by the close of business on Jan. 26, 2001.

~~be damaged by the temporary enforcement of his Employment Agreement and~~

~~preservation of the status quo.~~

Date: 1/24/01
3:20 p.m.

s/ U.S. District Judge
United States District Court
Northern District of Illinois

3

L80507-1

**EXHIBIT 2**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

DEAN WITTER REYNOLDS, INC.,　　　　)
a Delaware corporation,　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　　Case No. 00 C 7595
　　v.　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
JOHN S. SPILLANE,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　Defendant.　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)

## TEMPORARY RESTRAINING ORDER

　　　　This matter having come before the Court, upon consideration of the verified
complaint for injunctive relief, plaintiff's motion for a temporary restraining order and
brief, plaintiff's motion for expedited discovery and defendant's cross-motion to stay
this matter pending arbitration, and all parties being present through counsel and
argument having been made and heard, the Court, pursuant to Rule 65 of the Federal
Rules of Civil Procedure, grants the Motion for Temporary Restraining Order.

　　　　1.　　Plaintiff, Dean Witter Reynolds, Inc. ("Dean Witter"), will suffer
　　　　　　　irreparable harm and loss if defendant is permitted to (a) convert the
　　　　　　　property of Dean Witter to defendant's own personal use and benefit, or
　　　　　　　that of defendant's new employer, and (b) solicit Dean Witter accounts,
　　　　　　　clients and customers;

　　　　2.　　Plaintiff has no adequate remedy at law;

　　　　3.　　Greater injury will be inflicted upon plaintiff by the denial of temporary
　　　　　　　injunctive relief than would be inflicted upon defendant by the granting
　　　　　　　of such relief;



4.    The public's interest was considered in granting this temporary
        restraining order.

It is ordered that defendant temporarily be enjoined and restrained directly or
indirectly, and whether alone or in concert with others, from:

A.    using, disclosing, or transmitting any or all property of Dean Witter
        including, but not limited to, proprietary software, customer records,
        holding pages, account statements or other information obtained during
        his employment with Dean Witter whether in the form of hard copy or in
        the form of information stored on a computer hard drive or disk,
        including the names, addresses, and financial information of any Dean
        Witter customers; and

B.    soliciting any Dean Witter customer whose account defendant serviced
        while employed at Dean Witter; and

C.    accepting any business from any customers whom 1) defendant solicited
        to transfer their business to Prudential Securities; and 2) had been
        serviced by defendant while employed at Dean Witter; and

D.    transacting or servicing any business for any customers whom
        1) defendant solicited to transfer their business to Prudential Securities;
        and 2) had been serviced by defendant while employed at Dean Witter.

This order does not require Dean Witter to post security.

It is further ordered that plaintiff's motion for expedited discovery is granted in
part. Pursuant thereto, defendant is to respond on or before Tuesday, December 12,
2000, to the expedited written discovery requests submitted by Dean Witter. Plaintiff's
motion to depose defendant on an expedited basis is denied.

2

1:05-09-05) 10:33 AM-JFom-ARCHER GREINER Page 32 of 50
FEB. 8. 2005  5:21PM   HERTZ SCHRAM UNKLFVRI
DEC-13-2002  09:40         FOLEY & LARDNER

+856 795 0574        T-046  P.010   F-315
                                    P.10/11

Defendant is also permitted to serve expedited and limited discovery requests upon plaintiff with respect to any information that is critical to the preliminary injunction action. Responses to any such discovery requests will be due seven days after the requests are served.

Plaintiff's request for fees associated with the costs of bringing its motion for a temporary restraining order is denied.

Subject to this Order's prohibitions on defendant soliciting, servicing or transacting business, Prudential Securities, Inc., but not defendant, may accept and service account transfers from any customers who were serviced by defendant during his employment at Dean Witter.

During the term of this temporary restraining order, or any valid extension thereof, defendant may communicate with but not solicit, directly or indirectly, any Dean Witter customer whose account Spillane serviced while employed at Dean Witter. Any such communication, however, regarding the defendant's departure from Dean Witter shall be subject to the following limitations:

1) if written, shall be maintained by defendant and made available to the plaintiff prior to the sending of the communication; and

2) if oral and recorded, a written transcription of such recording shall be produced by defendant and made available to the plaintiff; but if the communication is oral and not recorded, defendant shall prepare a written script for use in such communications and shall provide plaintiff with a copy of the written script prior to any such oral communications.

Plaintiff is permitted to contact current or former Dean Witter clients and advise them that defendant is subject to this temporary restraining order.

3

FEB. 8. 2005  5:21PM    HERTZ SCHRAM CARLTON    +856 795 0574    T-046  P.011  F-315
DEC-13-2002  09:41       FOLEY & LARDNER                              P.11/11

Further, plaintiff is permitted to contact individuals who have on or after November 22, 2000, transferred their accounts from Dean Witter's Oakbrook Office to Prudential Securities Oakbrook Terrace Office to ascertain whether such transfer was the result of defendant's solicitation.

Defendant's motion to stay this matter pending arbitration is denied.

This temporary restraining order shall remain in effect, unless extended by order of Court, through December 15, 2000.

This matter is continued for status until December 14, 2000 at 1:00 p.m.

Date: ____12/6/00____

____S/Wm. Hibbler____
Honorable Judge Hibbler
United States District Court
Northern District of Illinois

4

**EXHIBIT 3**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

DEAN WITTER REYNOLDS, INC.,
a Delaware corporation,

Plaintiff,

v.

DAVID SEMERSKY,

Defendant.

Case No. 99 C 6302

## TEMPORARY RESTRAINING ORDER

This matter having come before the Court, upon consideration of the Verified Complaint for injunctive relief, plaintiff's motion for a temporary restraining order and brief, and pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Court grants the Motion for Temporary Restraining Order.

1.   Plaintiff, Dean Witter Reynolds, Inc. ("Dean Witter"), has shown at this stage a substantial likelihood of success on the merits;

2.   Plaintiff has no adequate remedy at law and irreparable injury may follow if the Defendant David Semersky is not enjoined;

3.   The public interest favors the granting of temporary injunctive relief, and temporary injunctive relief will preserve the status quo;

It is ordered that defendant David Semersky be enjoined and restrained directly or indirectly, and whether alone or in concern with others, until arbitration hearing and thereafter, from:

A.   Contacting or soliciting, in any manner whatsoever or by any medium any current customers or clients of Dean Witter as of September 24,

1999. Dean Witter may be entitled to expand the order should further inquiry suggest the appropriateness of including in its scope former customers of Dean Witter;

B.   Using, disclosing, or transmitting any or all property of Dean Witter including, but not limited to, proprietary software, customer records, holding pages, account statements or other client identifying information whether in the form of hard copy or in the form of information stored on a computer hard drive or disk, including the names, addresses, and financial information of any Dean Witter customers; and

C.   It is further ordered that the defendant shall provide to Dean Witter on or before September 29, 1999 responses to certain expedited discovery including requests to produce documents and interrogatories.

Date: **September 24, 1999**

s/ U.S. District Judge

United States District Court
Northern District of Illinois

**EXHIBIT 4**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MERRILL LYNCH, PIERCE, FENNER & )
SMITH INC., )
)
Plaintiff, )
)
v. )            NO: 00 C 2351
)
ROBERT E. CURRY and )      Judge Rebecca R. Pallmeyer
KENNETH J. ROGERS )        Magistrate Judge Arlander Keys
)
Defendants. )

## ORDER

This cause coming to be heard on Emergency Motion of Plaintiff for temporary

restraining order pursuant to notice, and the Court being advised upon Memoranda of Law and

argument from counsel for both parties.

IT IS HEREBY ORDERED THAT:

1.   Defendants are enjoined and restrained, directly or indirectly, and whether alone

or in concert with others, including any officer, agent, representative, and/or employee of

Defendants' new employer, Morgan Stanley Dean Witter ("Morgan Stanley"), until further Order

of this Court, from:

(a)    initiating any further contact, except for customers who have signed an account

transfer form as of the date and time of this Order, whether through

announcements, telephone calls or other means, with any client of Merrill Lynch

whom Defendants served or whose name became known to Defendants while in

the employ of Merrill Lynch for the purpose of doing business with Defendants'

present employer, Morgan Stanley (excluding members of Defendants' immediate

family), unless responding to contact which clients initiate; and

...ng for any purpose, including so...itation of said

...contained in the records which Defendants removed from

...any, including, but not limited to, the names, addresses, and

...al information of clients referenced in subparagraph (a).

Defendants, and anyone acting in active concert or participation with Defendants ...receives actual notice of this Order, including any agent, employee, officer or representative of Defendants' new employer, Morgan Stanley, are further ordered to return to counsel for Defendants any and all materials which Defendants removed from Merrill Lynch, if any, pertaining to Merrill Lynch customers whether in original, copied, computerized, handwritten or any other form, and purge any such materials and any information taken directly from those materials, from his possession, custody, or control, within 48 hours of service upon Defendants of this Order. Counsel for Defendants shall immediately provide a copy or an inventory of such materials to counsel for plaintiff, on or before Friday April 21, 2000.

3.    This Order shall remain in full force and effect until such time as this Court or the arbitrator(s) specifically order otherwise.

4.    The parties are directed to proceed with an arbitration hearing to be held in 3 to 5 days.

5.    This order is without prejudice to the parties' positions on the merits.

6.    This matter is set for status on May 5, 2000 at 9:00 a.m. without further notice to the parties.

April 19, 2000
10:28 a.m.

ENTERED:

S/Rebecca Pallmeyer
The Honorable Judge Rebecca R. Pallmeyer

-2-

1:03-cv-01322-JBM-JAG  Page 40 of 50

**EXHIBIT 5**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MERRILL, LYNCH, PIERCE, FENNER & )
SMITH INC., )
        )
    Plaintiff, )
        )   98 C 8185
    v. )
        )
WILLIAM A. MANISCALCO )          **DOCKETED**
        )
    Defendant. )         **JAN 04 1999**

## ORDER

This matter comes before the court on motion of plaintiff Merrill Lynch for a temporary restraining order to enjoin defendant William A. Maniscalco, a former employee of Merrill Lynch, from soliciting any business from Merrill Lynch's clients known to or served by the defendant while he was a Merrill Lynch employee, from utilizing in any way information contained in Merrill Lynch's records, and to return any information in any way related to Merrill Lynch customers which he allegedly confiscated when he left Merrill Lynch''s employ. For the reasons set forth below, the relief sought is denied.

As a threshold matter, the parties have both alluded to the requirement of mandatory arbitration, a matter about which there is no dispute. Amended in 1996, Rule 10335 of the National Association of Securities Dealers Code of Arbitration Procedure (NASD Code) now provides that an aggrieved individual or entity may seek preliminary relief before one of two forums - the courts or the arbitrator.[1]

Defendant Maniscalco asserts strenuously that Merrill Lynch's application for the TRO should be denied in light of the provision in Rule 10335 that provides for injunctive relief immediately. Conversely, Merrill Lynch, while acknowledging such a provision, contends, equally strenuously, that it is indeed the movant's option to seek such relief from either of the two forums.

The facts which follow are derived from the verified complaint and the affidavits submitted by both parties. William A. Maniscalco, a former broker employed by Merrill Lynch, resigned on December 18, 1998, without notice to Merrill lynch, and commenced employment with Mesirow Financial, a competitor of Merrill Lynch. Merrill Lynch provided an affidavit in

---

[1]The defendant reports that he has filed with the NASD a statement of claim and request for immediate relief, and the Rule provides for an immediate hearing within one to three days.

FEB. 8. 2005  5:22PM    HERTZ SCHRAM DIRECTORY    +856 795 0574    T-046   P.020    F-315

support of its application for a TRO from Richard Shalla, Jr., Resident Vice President of one of Merrill Lynch's offices. He attests to certain agreements and documents signed by defendant relating to defendant's employment with Merrill Lynch, including a non-competition agreement. He further attests to the substantial investment in defendant by way of training and defendant's subsequent access to more than 560 Merrill Lynch accounts. Affiant Shalla references his beliefs that defendant has, since leaving plaintiff's employ, solicited many of Merrill Lynch's clients he serviced while at Merrill Lynch to transfer their accounts. Shalla mentions that defendant engaged in this activity for significant financial inducements paid to defendant by Mesirow Financial. Affiant Shalla does not, however, in his affidavit divulge the source of or basis for the aforementioned information. Shalla also opines that defendant has confiscated personal files, proprietary information and/or information to aid in diverting clients from Merrill Lynch (also without stating the basis for such an opinion).

Defendant, on the other hand, in his affidavit, while not disputing that he has solicited clients, does deny that he removed any original documents containing customer information from Merrill Lynch or that he removed personal client files. He also asserts, among other things, that he developed his own customers with little assistance from Merrill Lynch, he obtained clients from sources such as family members, school friends, civic groups of which he is a member, "cold calling", seminars and referrals from friends and family.[2]

The movant for a temporary restraining order must show 1) a substantial likelihood of success on the merits; 2) a threat of irreparable harm to it if the injunction is not issued; 3) the threatened injury outweighs any damage the order might cause to the defendant; 4) the injunction will disserve the public interest, and 5) a need for immediate relief to prevent irreparable injury, loss or damage that will likely occur if relief is not granted.

In light of the availability of immediate access to an NASD arbitrator, notwithstanding that this court interprets the rule to allow for either of the two forums, it seems appropriate under the circumstances of this case and in the exercise of this court's discretion, to defer to the arbitrator, one who no doubt has special expertise in the industry.

In light of the employment agreement and the fact that defendant does not dispute factually one of the allegations, i.e. solicitation of Merrill Lynch clients, Merrill Lynch has met the rather easy to meet element of likelihood of success on the merits.

With respect to the weighing of the harm to the respective parties, it is somewhat difficult to conclude that any harm might occur to Merrill Lynch which, if it ultimately prevails, could not

---

[2]The court notes that the affidavit of defendant Maniscalco has not been signed. Counsel for Maniscalco represented at oral argument that the signed copy is forthcoming. Notwithstanding the lack of a signature, counsel for Merrill Lynch has not challenged the affidavit on that basis.

2

be rectified by virtue of money damages. Conversely, this court does envision much more harm to defendant Maniscalco should a TRO issue.

Wherefore, for the foregoing reasons, Merrill Lynch's motion for a temporary restraining order is denied.

ENTER  *s/ Blanche M. Manning*
BLANCHE M. MANNING
U.S. DISTRICT COURT JUDGE

DATE: **DEC 22 1998**

3

**EXHIBIT 6**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

PRUDENTIAL SECURITIES INCORPORATED,    )
                              )
                    Plaintiff,   )
                              )    No. _9804386_
   v.                         )
                              )
JAMES D. McDERMOTT,           )
                              )
                    Defendant.  )

DOCKETED
JUL 16 1998

### ORDER

This matter came to be heard on July 1_4, 1998 on Plaintiff's Motion for a Temporary

Restraining Order. The Court has considered the Complaint, the Motion for Temporary

Restraining Order, the Memorandum in Support of Plaintiff's Motion, Affidavit In Support of

Plaintiff's Complaint, ~~and other written submissions of the parties~~ and heard the arguments of

counsel.

### THE COURT HEREBY FINDS AS FOLLOWS:

1.     This is an action to enforce the Financial Advisor in Training Agreement ("FAIT

Agreement") executed by defendant James D. McDermott ("McDermott") at the commencement

of his employment, and other related claims.

2.     Prudential Securities has sought a temporary restraining order seeking the

enforcement of McDermott's duties and obligations.

3.     McDermott received actual oral and written notice of Prudential Securities'

Motion for Temporary Restraining Order.

4.     It is more likely than not that Prudential Securities will succeed on the merits at

trial.




5. Prudential Securities will suffer irreparable harm and loss in the event that a temporary restraining order is not granted.

6. Prudential Securities has no adequate remedy at law.

7. *[Gr]eater* injury will be inflicted upon Prudential Securities by the denial of the temporary restraining order than would be inflicted on the defendant by the granting of such relief.

8. The public interest will not be harmed by the granting of the temporary restraining order.

IT IS HEREBY ORDERED THAT:

*to the offices of Neal Gerber & Eisenberg*

A. McDermott and any persons acting on behalf of or in concert with him are ordered to return ~~immediately to Prudential Securities~~ all original and photocopied documents, computer disks and computerized data which were removed from Prudential Securities' office, database or computers, as well as all copies, derivatives and compilations thereof and any computer equipment owned by Prudential Securities, to the offices of ~~Ungaretti & Harris, to the attention of Steven M. Malina at 3500 Three First National Plaza, Chicago, Illinois 60602~~ by 5:00 p.m. on July 14, 1998; *subject to other mutual agreement of the parties;*    *Neal Gerber & Eisenberg*

B. McDermott and any persons acting on behalf of or in concert with McDermott are enjoined from discussing, using, disclosing or transmitting, directly or indirectly, any information contained in the hard copy or computerized records of Prudential Securities *except (i) in connect with proving Account transfers and (ii) such information as provided to Defendant by customers.*

C. McDermott and any persons acting on behalf of or in concert with McDermott are enjoined from (1) soliciting business from any Prudential Securities customers located within a 100-mile radius of the Orland Park, Illinois office whom defendant served or whose names became known to him while in Prudential Securities' employ, ~~and (2) accepting business from any Prudential Securities customers located within a 100-mile radius of the Orland Park, Illinois office whom defendant served or whose names became known to him while in Prudential Securities' employ whom McDermott previously solicited;~~

D. This order will expire at 5:00 p.m. on July 24, 1998 *or as directed by an arbitral tribunal time unless extended by a arbitral panel which is empaneled* further order of this Court. ~~Defendant shall appear before this Court on _____ 1998 at _____ o'clock __ .m. and show cause why a preliminary injunction should not be entered according to the terms and conditions set forth above. If defendant intends to submit papers in opposition to the entry of a preliminary injunction, he shall file and serve copies of those papers by _____, 1998; and Plaintiff shall file and serve copies of any reply to said opposition by _____, 1998.~~

SSCUH2-319647

-2-

*Plaintiff shall post a $25,000 bond by the close of business on July 15, 1998*

This Order is entered to maintain the status quo and is without prejudice to the merits, the claims or defenses which have been or may be asserted in this litigation.

Dated: July *14*, 1998          SO ORDERED:

                                  *s/ Judge*
                                  _____
                                     **Judge**

**EXHIBIT 7**

CLERK'S FILE COPY

1

<pre>
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3

 4    PRUDENTIAL SECURITIES, INC.,    )
                                      )
 5               Plaintiff,           )
                                      )
 6          -vs-                      )   No. 98 C 1467
                                      )
 7    BHAGESREE RAMACHANDRAIYER,      )   Chicago, Illinois
                                      )   March 11, 1998
 8               Defendant.           )   3:00 p.m.

 9                    REPORT OF PROCEEDINGS - Motion
            BEFORE MAGISTRATE JUDGE MORTON DENLOW
10

11    For the Plaintiff:          MR. STEVEN M. MALINA,
                                  Deputy Regional Counsel
12                                Prudential Securities
                                  One North Franklin Street
13                                Suite 550
                                  Chicago, Illinois  60606
14
                                  MR. BRENT BURNS
15                                (Coffield, Ungaretti & Harris)
                                  3500 Three First National Plaza
16                                Chicago, Illinois  60602

17    For the Defendant:          MR. L. ANDREW BREHM
                                  MR. JOHN ROCHE
18                                (Schuyler, Roche & Zwerner)
                                  One Prudential Plaza
19                                130 East Randolph Street
                                  Suite 3800
20                                Chicago, Illinois  60601

21

22    Court Reporter:
                         GERALDINE D. MONAHAN, CSR, RPR
23                          Official Court Reporter
                         United States District Court
24              219 South Dearborn Street, Room 1928
                          Chicago, Illinois 60604
25                        Telephone (312) 435-6890
</pre>

DOCKETED
MAR 26 1998

1   by her, but she has to make some provision to see to it that at

2   least until business on Monday, nobody else is using it.

3           Is take acceptable?

4           MR. BREHM:   That makes sense.

5           THE COURT:   And will you provide a copy to Mr. Malina

6   by the close of business on Friday?

7           MR. BREHM:   We'll use our best efforts to do so.   I

8   don't know how much --

9           THE COURT:   Let him know by the close of business

10  Friday where you stand in the process if for some reason you are

11  not able to provide him with a complete copy so that he at least

12  knows what efforts are being made.

13          MR. MALINA:   Obviously, we will need that for the

14  arbitration hearing.

15          THE COURT:   I assume that.

16          What else?

17          MR. MALINA:   The only other thing I would ask, your

18  Honor, if for some reason, whether the NASD or NYSE, I don't

19  anticipate this being the case, but if for some reason the

20  hearing cannot be scheduled Monday but rather is scheduled on

21  Tuesday, can we come before you again, if we can't reach an

22  agreement, that she continue to abide by this agreement?

23          THE COURT:   I would obviously -- if it's not the fault

24  of anybody and everybody is operating in good faith and nobody

25  is delaying, it just turns out that the arbitrator for some

                Geraldine D. Monahan, Official Court Reporter