28

1   reason decides he would rather read something before initiating

2   a hearing, you know, I'll leave it to your good judgment.  But I

3   will be available.  I would encourage you to try to work it out.

4          MR. MALINA:  We'll endeavor to do that, your Honor.

5          THE COURT:  How do we memorialize this?

6          MR. MALINA:  Well, unfortunately I didn't bring an

7   order prepared for this, obviously.  Perhaps Mr. Brehm and I can

8   etch something out.

9          MR. BREHM:  If we could call upon the good offices of

10  the court staff and the reporter, if that's --

11         THE COURT:  As far as I'm concerned, if the agreement

12  that was recited in the transcript is acceptable to both

13  parties, that will stand as the agreement until Monday.  You

14  order an expedited transcript, and you'll both have it

15      (Discussion off the record.)

16         THE COURT:  I can enter a minute order.  The

17  plaintiff's motion for temporary restraining order is entered

18  and continued pursuant to the agreement expressed in open

19  court.  And if you want, I can set you for status Tuesday

20  morning at 10:00.  If you are in your proceeding, just call my

21  minute clerk and say:  We're not proceeding.  Everything is

22  hunky-dory, fine.

23         If some glitch has comes up and somebody needs a TRO

24  or preliminary injunction because either the NASD or NYSE is

25  saying:  No, you can't have a hearing for three weeks, and you

29

1    don't want to wait three weeks, come see me Tuesday morning.

2              MR. MALINA:  Okay.

3              THE COURT:  So I'll say your motion for temporary

4    restraining order and preliminary injunction is entered and

5    continued until Tuesday at 10:00, pursuant to the agreement

6    expressed in open court.

7              MR. MALINA:  Very good.  Thank you, your Honor.

8              THE COURT:  Thank you.

9              MR. BREHM:  Thank you.

10                       C E R T I F I C A T E

11   I certify that the foregoing is a correct transcript from the

12   record of proceedings in the above-entitled case on March 11,

13   1998 at 3:00 p.m.

14

15

16   _____          _____
     Official Court Reporter                        Date
17   United States District Court
     Northern District of Illinois
18   Eastern Division

19

20

21

22

23

24

25

                  Geraldine D. Monahan, Official Court Reporter

**EXHIBIT 8**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MERRILL LYNCH, PIERCE, FENNER    :
& SMITH. INC.,                   :
                                 :
            Plaintiff,           :
                                 :
     v.                          :        No. - 94 C 7402
                                 :        Judge Zagel
ROBERT C. IORII,                 :
                                 :
            Defendant.           :

### ORDER

AND NOW, this 13ᴬᵀ day of December, 1994, upon
consideration of the Verified Complaint and Motion of Plaintiff
and having determined that:

1. The rights of Plaintiff with respect to its
property, proprietary and confidential information, competitive
interests, and contract with Defendant are being and will
continue to be violated by Defendant unless Defendant is
restrained therefrom;

2. Plaintiff will suffer irreparable harm and loss if
Defendant is permitted to (a) convert the property of Merrill
Lynch to Defendant's own personal use and benefit, and that of
Defendant's new employer, and (b) solicit Merrill Lynch accounts,
clients, and customers;

3. Plaintiff has no adequate remedy at law; and

4. Greater injury will be inflicted upon Plaintiff by
the denial of temporary injunctive relief than would be inflicted
upon Defendant by the granting of such relief.

IT IS HEREBY ORDERED AND DECREED THAT:

    1.    A Temporary Restraining Order issue immediately and that security in the amount of $ 40,000 be posted no later than the 14ᵗʰ day of December, 1994;

    2.    Defendant is enjoined and restrained, directly or indirectly, and whether alone or in concert with others, including any officer, agent, representative, and/or employee of Defendant's current employer, Smith Barney, Inc., until hearing and thereafter until further Order of this Court, from:

    a)    soliciting any business from any client of Merrill Lynch whom Defendant served or whose name became known to Defendant while in the employ of Merrill Lynch, including, without limitation, all individuals and entities referenced in Exhibit "C" to Plaintiff's Verified Complaint; and, further, from accepting any business or account transfers from any of said customers whom Defendant has solicited at any time in the past for the purpose of doing business with Defendant's present employer (excluding Defendant's immediate family and clients residing more than 100 miles from the Barrington, Illinois office of Merrill Lynch);

    b)    using, disclosing, or transmitting for any purpose, including solicitation of said clients, the information contained in the records of Merrill Lynch, including, but not limited to, the names, addresses, and

2

financial information of clients referenced in Exhibit "G"
to Plaintiff's Complaint; and that all original records and
copies and/or other reproductions thereof, in whatever form,
be returned to Plaintiff immediately;

3. This Order shall remain in full force and effect
until ~~such time as this Court specifically orders otherwise;~~ January 12, 1975
8:30

4. Plaintiff is granted leave to commence discovery
immediately in aid of preliminary injunction proceedings before
the Court;

5. Pending a preliminary injunction hearing before
this Court, and pursuant to the requirements of sections 3 and 4
of the Federal Arbitration Act, 9 U.S.C. §§ 3-4, the parties are
directed to commence and proceed with arbitration in accordance
with the Constitution and Rules of the New York Stock Exchange
without waiver of the parties' right thereunder.

6. Defendant shall show cause before this Court on
the 10th day of ~~December~~, January, 1975 at 10:00 o'clock A.m., or as
soon thereafter as counsel may be heard, why a Preliminary
Injunction should not be ordered according to the terms and
conditions set forth above.

BY THE COURT:

S/ U.S.District Judge
U.S.D.J.

3

**EXHIBIT 9**

Not Reported in F.Supp.
(Cite as: 1991 WL 83163 (N.D.Ill.))

**MERRILL LYNCH, PIERCE, FENNER &
SMITH, INC., Plaintiff,**
v.
**Stuart PATINKIN, Defendant.**

No. 91 C 2324.

United States District Court, N.D. Illinois,
Eastern Division.

May 9, 1991.

MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

**\*1** This matter is before the court on
plaintiff's Motion to extend the Temporary
Restraining Order issued April 19, 1991,
pending an award and final decision of the
arbitration panel of the New York Stock
Exchange, defendant's Motion to Vacate the
Temporary Restraining Order, and
defendant's motion to increase bond set under
the temporary restraining order. Plaintiff's
motion to extend the Temporary Restraining
Order is granted. The Temporary Restraining
Order is extended until July 1, 1991. At that
time the court will review the status of the
arbitration proceedings, and may extend the
TRO if there is good cause to do so.
Defendant's Motion to Increase Bond Set on
the order to $50,000 is granted. Defendant's
motion to vacate the temporary restraining
order is denied. Any further proceedings in
this case are stayed pending an award and
final decision of the arbitration panel in
accordance with the Constitution and Rules of
the New York Stock Exchange.

### Background

Plaintiff's verified complaint alleges that
Stuart Patinkin entered Plaintiff's employ on
March 15, 1982, pursuant to an Account
Executive Trainee Agreement ("the
Agreement"). The Agreement provides that
Merrill Lynch retains exclusive ownership of
its client records and account information,
which are to be kept confidential. The
Agreement also provides that the defendant
will not solicit any of Merrill Lynch's clients

for a period of one year after the termination
of his employment from Merrill Lynch. [FN1]

On April 12, 1991, defendant resigned from
his job at Merrill Lynch, without notice, to
work at Prudential Securities, a securities
firm which is competitive with Merrill Lynch.
Indeed, plaintiff claims that the day after
Patinkin left Merrill Lynch, his former Merrill
Lynch customers received letters from
Prudential Securities soliciting their business.
[FN2]

Plaintiff alleges that Patinkin took account
records out of the Merrill Lynch office, and
that the defendant used and transmitted
information from these records in order to
solicit Merrill Lynch's customers. On April
19, 1991, plaintiff filed this action for
conversion, breach of fiduciary duty, and
unfair competition. On that same day,
plaintiff also requested immediate injunctive
relief, in the form of a Temporary Restraining
Order ("TRO"), prohibiting the defendant from
further breaching the terms of the Agreement.
In response to plaintiff's motion, the
defendant presented a written motion to
compel arbitration, and oral argument on both
the motion to compel arbitration, and in
opposition to the TRO. Defendant Stuart
Patinkin was given the opportunity to testify
at oral argument, but declined. Hence, the
TRO was issued after notice was given to the
Defendant, and after the court heard and
considered the motions, oral evidence and
other submissions by both parties. [FN3]

In issuing the TRO the court found that the
Agreement "contain[ed] various restrictions on
Defendant's ability to use Plaintiff's records
and otherwise compete with Plaintiff upon a
change in the Defendant's employment."
(TRO, para. 2). Further, the court also found
that the plaintiff had no adequate remedy at
law for the alleged breach of the Agreement
(TRO, para. 5), and that the plaintiff would
suffer irreparable harm and loss if a TRO was
not granted (TRO. para. 4). Finally, the court
found that greater injury would be inflicted
upon the plaintiff by the denial of the TRO
than would be inflicted upon the defendant by
granting the TRO. (TRO, para. 6).

Copr. © West 1999 No Claim to Orig. U.S. Govt. Works



Not Reported in F.Supp.
(Cite as: 1991 WL 83163, *1 (N.D.Ill.))

**\*2** The TRO both enjoined and restrained the defendant from soliciting or accepting business from any client of plaintiff's whom defendant served, or whose name became known to the defendant while in plaintiff's employ. [FN4] Defendant was also enjoined and restrained from accepting any business from any clients whom Defendant solicited for purposes of doing business with Prudential Bache. Finally, defendant was enjoined and restrained from using, disclosing or transmitting information contained in plaintiff's records, including the names and addresses and financial information of plaintiff's clients. Patinkin was ordered to deliver any original records or copies to plaintiff, or it's attorney.

The court also granted the defendant's motion to compel arbitration, and ordered the parties to submit to arbitration in this matter, as provided for by the Constitution and Rules of the New York Stock Exchange. [FN5] Finally, the court noted that the TRO was entered to maintain the status quo and without prejudice to the merits of the claims of defenses which had been or may be asserted in this litigation. Under the court's order, the TRO was in effect until April 29, 1991.

On April 23, 1991, the defendant filed a motion for an increase in the amount of bond posted by the plaintiff, which was stayed by the court pending resolution of this motion. The defendant also filed a motion to compel expedited arbitration. On the same day, the court heard oral argument on these issues.

The court denied the motion for expedited arbitration, finding that the contractual provisions of the Agreement did not provide for expedited arbitration. [FN6] Because the terms of the Agreement merely required the parties to arbitrate in accordance with the Constitution and rules of the New York Stock Exchange, the court could not force the plaintiff to submit to expedited arbitration. See e.g., Merrill Lynch v. Cunningham, 786 F.Supp. 887 (N.D.Ill.1990); and Merrill Lynch v. Tobias, 90 C 20210, U.S. District Court, Western Division (July 17, 1990).

On April 29, 1991, the plaintiff brought this motion to extend the TRO pending an award and final decision of the arbitration panel in accordance with the Constitution and Rules of the NYSE. [FN7] A few minutes before motion call, the defendant submitted several documents and motions to the court, raising numerous arguments against the extension of the TRO. Defendant submitted a report on the status of the proceedings and accompanying affidavits, objections to plaintiff's motion to extend the TRO, and an answer to the plaintiff's complaint. The court continued the hearing until 6:00 p.m.. The plaintiff, at that time, submitted its response to the defendant's objections. The court extended the TRO one day, and referred the matter to the emergency judge, as this judge was absent from court on April 30, 1991. The emergency judge did not hear the merits of the motions, and the parties agreed to extend the TRO for one day. This court held a hearing on May 1, 1991.

### Discussion

**\*3** This court has already determined that the dispute in this case is arbitrable, and has ordered the parties to submit their dispute to arbitration. Since that time, Patinkin has complied with the TRO by returning all documents to plaintiff's attorney. [FN8] Although Patinkin, Prudential Bache Securities, and Merrill Lynch have initiated arbitration of their disputes before the New York Stock Exchange, the parties apparently have not agreed to find a mutually convenient date to proceed with arbitration proceedings in Chicago.

Now that arbitration proceedings have been initiated and the documents have been returned to the plaintiff, the defendant asserts that any harm or loss that Merrill Lynch has 'allegedly' suffered prior to the entry of the TRO has ceased due to Patinkin's compliance with the TRO. Defendant reasons that the balance of the equities has now tipped overwhelmingly in favor of Patinkin who will be unable to earn a living while this injunction in force. Defendant also argues that because the plaintiff refuses to go to

Copr. © West 1999 No Claim to Orig. U.S. Govt. Works



Not Reported in F.Supp.
(Cite as: 1991 WL 83163, *3 (N.D.Ill.))

Page 3

expedited arbitration, equity and fairness require the court to vacate the temporary restraining order.

Under Federal Rule of Civil Procedure 65, unless there is agreement for extension between the parties, the court cannot extend a TRO without good cause. The Rule provides that a TRO:

... shall expire by its terms within such time after entry, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period. The reasons for extension shall be entered of record....

This court's reading of the rule is that under Federal Rule of Civil Procedure 65, a court cannot extend a TRO without a showing of good cause. Evidence of good cause is especially important when the TRO has been issued without notice to the other side. [FN9] In the instant case, the defendant did of course, have notice and an opportunity to be heard before the TRO was issued. Therefore, the only question presented here is whether there is good cause to extend the TRO.

The court recognizes that the defendant has returned the documents he removed from Merrill Lynch as required under the TRO. Because the documents have been returned, the only possible remaining harm to plaintiff is that the defendant may solicit its clients. The court finds that this possible harm justifies the extension of the TRO. As the Fourth Circuit Court of Appeals noted in Merrill Lynch v. Bradley, 756 F.2d 1048 (4th Cir.1985), a case that was factually similar to this one, the continuing possibility that the defendant will solicit plaintiff's clients justifies the TRO's extension. Without injunctive relief the defendant's conduct might irreversibly damage the status quo:

When an account executive breaches his employment contract by soliciting his former employer's customers, a non-solicitation clause requires immediate application to have any

effect. An injunction even a few days after solicitation has begun is unsatisfactory because the damage is done. The parties cannot be 'unsolicited.' It may be impossible for the arbitral award to return the parties substantially to the status quo ante because the prevailing parties' damages may be too speculative.

*4 Id. at 1054.

The Bradley court therefore concluded that:

[W]here a dispute is subject to mandatory arbitration under the Federal Arbitration Act, a district court has the discretion to grant a preliminary injunction to preserve the status quo pending arbitration of the parties' dispute if the enjoined conduct would render that process a 'hallow formality.' The arbitration process would be a hallow formality where 'the arbitral award when rendered could not return the parties substantially to the status quo ante.' ... [this] decision will further, not frustrate, the policies underlying the Federal Arbitration Act.

Id. at 1058-1054.

Two other courts in this circuit have considered the issue of extending a temporary restraining order, in cases which were factually similar to this one. In Merrill Lynch v. Cunningham, 736 F.Supp. 887 (N.D.Ill.1990) and Merrill Lynch v. Tobias, 90 C 20210, U.S. District Court, Western Division (July 17, 1990), both courts found that the extension of the TRO was justified because of plaintiff's likely, and threatened loss of clients, and the irreparable harm that plaintiff would suffer if the TRO was not extended. See also, Merrill Lynch v. Mathes, No. CY-90-3060-AAM, U.S. District Court, Eastern District of Washington (August 2, 1990) (Injunctive relief extended pending arbitration of parties dispute).

The defendant has attacked the extension of the TRO on a number of grounds. First, the defendant argues that the Agreement is not valid. At the hearing on the motion to extend the TRO, the defendant testified that he was

Copr. © West 1999 No Claim to Orig. U.S. Govt. Works



Not Reported in F.Supp.
(Cite as: 1991 WL 83163, *4 (N.D.Ill.))

told by his supervisor that he was bound to the terms of the Agreement for only a two year period.  Since the Agreement was signed in 1982, Patinkin argues that he is no longer bound to the its terms.  The court finds that this argument is not credible, and is not supported by the clear terms of the parties' Agreement, which the defendant admitted he read, and understood before signing. [FN10] No language in the Agreement suggests that it is enforceable for only a limited period of time.  The court rejects this position.

Defendant also argues that the TRO should be vacated because the Agreement, which defendant alleges is a restrictive covenant, is unenforceable.  Defendant testified that some seventy to eighty percent of the clients he served at Merrill Lynch were long time friends, neighbors, and relatives, which he solicited without any real input from Merrill Lynch.  Defendant asserts that under Illinois law, since he developed his client base, and provided the information about his clients to Merrill Lynch, the information is not confidential.  Defendant reasons that since the information is not confidential, Merrill Lynch does not have a legitimate protectable interest in enforcing the restrictive covenant.

As the court told the parties several times at oral argument, these arguments have little bearing on the court's ruling on the motion for the extension of the TRO.  In general, this court will not consider the merits of this case or the overall validity of the Agreement, as that is better left to the arbitration board. [FN11]

*5 Even if relevant to this motion, the court finds that the defendant's argument concerning his client base and the restrictive covenant has no weight. [FN12]  Defendant's argument regarding the unenforceability of the Agreement as a restrictive covenant is based on Illinois law.  Paragraph 4 of the Agreement explains, that the "Agreement shall be construed, and the validity, performance and enforcement thereof shall be governed by the laws of New York."  Therefore, Illinois law does not apply. [FN13]  Also, the court believes that this argument is weak on its face, since the relevant language of the contract makes no distinction between clients Patinkin brought to the firm, and those supplied by Merrill Lynch. [FN14]

Finally, the defendant pointed out that at least one court in this circuit has declined to extend a TRO pending arbitration of the dispute.  In Merrill Lynch v. Rosenbaum 90 C 5081 (N.D.Ill.1990), once the defendant returned plaintiff's account information, and plaintiff's claim had been submitted to the New York Stock Exchange, Judge Conlon vacated the TRO because she found that the balance of the equities favored the defendant.  Here, this court issued the TRO out of concern for plaintiff's interest in its client base as well as its business records, and therefore declines to follow the Rosenbaum decision.

In addition, the court is not persuaded by defendant's argument that he will suffer undue hardship by the loss of Merrill Lynch clients if the TRO stays in effect until this matter is resolved by the arbitration board.  The court finds that although this argument has some merit, the defendant has the ability to contact new clients, to solicit business from them, and to receive customers from Prudential.  The court also notes that the TRO does not restrict solicitation of business from family members.  Further, while defendant testified as to the hardship he would face if the TRO remained in effect, he also testified that he was given a bonus when he joined Prudential.

Furthermore, defendant's argument that the hardship suffered by his Merrill Lynch clients requires the dissolution of the TRO must be also rejected.  Those customers are free to do business with other brokers at Merrill Lynch, or they can transfer their accounts to other brokerage firms.  There is no great public harm from the clients' temporary loss of Mr. Patinkin's services.  His clients, like those of many others before him, can find other brokers to manage their accounts until this matter is resolved by the arbitration board.  The court finds that the balance of the equities does not favor vacating the TRO.



**EXHIBIT 10**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MERRILL LYNCH, PIERCE, FENNER &       )
SMITH, INC., a Delaware corporation,  )
                                      )
            Plaintiff,                )
                                      )
vs.                                   )    Case No. 91 C 2432
                                      )
VINCENT ROMANO,                       )    Judge James Parsons
                                      )
            Defendant.                )    Magistrate Judge Edward Bobrick

## TEMPORARY RESTRAINING ORDER

This matter is before the Court on Motion of Plaintiff MERRILL LYNCH,
PIERCE, FENNER & SMITH, INC. for a temporary restraining order restraining
Defendant VINCENT ROMANO from utilizing confidential information of the
Plaintiff.

Based on the verified documents and the statements of counsel in open
court, the Court finds as follows:

1.    The Defendant resigned from the employment of the Plaintiff on or
about March 15, 1991 and immediately entered into the employment of a
competitor, Hamilton Investments, Inc.

2.    It appears that Defendant has taken certain documents and information
pertaining to Plaintiff's clients from Plaintiff's premises.

3.    Plaintiff will suffer irreparable harm and loss if Defendant is
permitted to (a) convert the property of Merrill Lynch to Defendant's own
personal use and benefit, and that of Defendant's new employer, Hamilton
Investments, and (b) solicit Merrill Lynch accounts, clients and customers.

4.    Plaintiff has no adequate remedy at law.

5.    Greater injury will be inflicted upon Plaintiff by the denial of a temporary restraining order than would be inflicted upon Defendant by the granting of such relief.

IT IS THEREFORE ORDERED:

A.    Plaintiff shall tender to the Court security in the amount of TWENTY-FIVE THOUSAND and NO/100 ($25,000.00) DOLLARS.

B.    Defendant is hereby enjoined and restrained, directly or indirectly, and whether alone or in concert with others, including any agent, representative or employee of Defendant's current employer, until hearing and thereafter until further Order of this Court from:

1)    soliciting any business from any client of Merrill Lynch whom Defendant served or whose name became known to Defendant while in the employ of Merrill Lynch, and from accepting any business from any of said customers whom Defendant has solicited in the past for the purpose of doing business with Defendant's present employer, including, without limitation, all individuals and entities holding or having an interest in the accounts identified by account number in Exhibit "A" to this order;

2)    using disclosing, or transmitting information contained in any records of Merrill Lynch, including the names, addresses, and financial information of clients described in Exhibit "A".

C.    Defendant is ordered to provide in open court at 12:00 p.m. on April 26, 1991 the following:

- 2 -

1) all documents taken from the Plaintiff on or before March 15, 1991 and all copies of all documents taken from the Plaintiff on or prior to March 15, 1991.

2) an affidavit stating (a) the existence and location of all documents, electronic data storage elements, computer records or other means and methods of information recording or storage which contain customer information, including but not limited to the names, addresses and any other information about Plaintiff's customers, removed from the possession of the Plaintiff before or after March 15, 1991, regardless of whether the information was removed from the possession of the Plaintiff by removal of tangible records and documents or by removal of electronic data storage materials; and (b) that all such materials, record, documents and electronic data storage materials described in paragraph C.2. (a) hereof have been ~~completely and irreversibly~~ surrounded to be retained pending further order of this court ~~destroyed or deleted.~~

D. On the 30th day of May, 1991 at 10:00 a.m., a hearing will be held on the issue of whether or not a preliminary injunction shall be granted.

ENTR

S/ U.S. District Judge
United States District Judge

Dated: April 25, 1991

Time: 3:25 p.m.

**EXHIBIT 11**

Feb-09-05   04:55pm   From-ARCHER GREINER

09/23/99   THU 18:38 FAX 810 535 5346         HERTZ SCHRAM SARETSKY                    ☒047

RECEIVED                                                           RECEIVED

JUN 0 4 1991

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS      JUN 03 1991
EASTERN DIVISION

Judge Harry D. Leinenweber
U. S. District Court

Judge Harry D. Leinenweber
U. S. District Court

MERRILL LYNCH, PIERCE, FENNER
& SMITH, INC.,

Plaintiff

v.

JAMES E. OTZKO,

Defendant

:
:
:
:
:
:
:
:
:
:
:
:

91C3400

No.   ___ LEINENWEBER

MAGISTRATE JUDGE BUCKLO

## ORDER

AND NOW, this ___ day of June, 1991, upon consideration
of the Verified Complaint and Motion of Plaintiff and having
determined that:

1.   Plaintiff will suffer irreparable harm and loss if
Defendant is permitted to (a) convert the confidential business
property of Merrill Lynch to Defendant's own personal use and
benefit, and that of Defendant's new employer, and (b) solicit
Merrill Lynch accounts, clients and customers;

2.   Plaintiff has no adequate remedy at law; and

3.   Greater injury will be inflicted upon Plaintiff by
the denial of temporary injunctive relief than would be inflicted
upon Defendant by the granting of such relief.

IT IS HEREBY ORDERED AND DECREED THAT:

1.   A Temporary Restraining Order issue immediately
and that security in the amount of $ 50,000 be posted no later
than the 4 day of June, 1991;

1:05-cv-01042-JBM-JAG #2-2    Page 18 of 50
Feb-09-05    03:36pm    From-ARCHER GREINER
FEB. 0. 2009    9.201m

08/23/99   THU 18:39 FAX 810 335 3346    HERTZ SCHRAM SARETSKY

+856 795 0574    T-046  P.044/084  F-315

图048

2.    Defendant is enjoined and restrained, directly or indirectly, and whether alone or in concert with others, including any officer, agent, representative and/or employee of Defendant's current employer, PaineWebber, Inc., until hearing and thereafter until further Order of this Court from:

a)    soliciting any business from any client of Merrill Lynch whom Defendant served or whose name became known to Defendant while in the employ of Merrill Lynch, and from accepting any business from any of said customers whom Defendant has solicited in the past for the purpose of doing business with Defendant's present employer including, without limitation, all individuals and entities referenced in Exhibit "B" to Plaintiff's Verified Complaint (excluding immediate family) and who reside within one hundred miles of the Merrill Lynch office in which he was employed;

b)    using, disclosing, or transmitting information contained in the records of Merrill Lynch, including but not limited to, the names, addresses, and financial information of clients referenced in Exhibit "B"; and that original records and copies thereof be returned to Plaintiff immediately;

3.    Plaintiff is granted leave to commence discovery immediately;

4.    This Order shall remain in full force and effect until such time as this Court specifically orders otherwise:

2

Feb-09-05 03:36pm From-ARCHER GREINER    Page 19 of 50    +856 795 0574    T-046  P.045/084  F-315
FEB. 09 2005  9:20PM    HERTZ SCHRAM SARETSKY    @048

09/23/99  THU 16:39 FAX 810 335 3346    HERTZ SCHRAM SARETSKY

     5.  Defendant shall show cause before this Court on the ___14___ day of ___June___ 1991 at ___1:30___ o'clock ___P.m.___, or as soon thereafter as counsel may be heard, why a Preliminary Injunction Should Not Be Ordered according to the terms and conditions set forth above.

BY THE COURT:

s/ Judge

3.

3

**EXHIBIT 12**

3/89  THU 16:38 FAX 810 335 3348    HERTZ SCHRAM SARETSKY    @044

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MERRILL LYNCH, PIERCE, FENNER
& SMITH, INC.,

    **Plaintiff**

  v.

BRIAN H. SUMMERS,

    **Defendant**

**JUDGE KOCORAS**

# 91C8231

MAGISTRATE JUDGE PALLMEYER

**ORDER**

AND NOW, this 23rd day of December 1991, upon consideration of the Verified Complaint and Motion of Plaintiff and having determined that:

  1. Plaintiff will suffer irreparable harm and loss if Defendant is permitted to (a) convert the property of Merrill Lynch to Defendant's own personal use and benefit, and that of Defendant's new employer, and (b) solicit Merrill Lynch accounts, clients and customers;

  2. Plaintiff has no adequate remedy at law; and

  3. Greater injury will be inflicted upon Plaintiff by the denial of temporary injunctive relief than would be inflicted upon Defendant by the granting of such relief.

IT IS HEREBY ORDERED AND DECREED THAT:

  1. A Temporary Restraining Order issue immediately and that security in the amount of $ 25,000 be posted no later than the 27th day of December, 1991;

  2. Defendant is enjoined and restrained, directly or

indirectly, and whether alone or in concert with others,
including any officer, agent, representative and/or employee of
Defendant's current employer, Prudential Securities, Inc., until
hearing and thereafter until further Order of this Court from:

> a)  soliciting any business from any client of Merrill
> Lynch whom Defendant served or whose name became
> known to Defendant while in the employ of Merrill
> Lynch, and from accepting any business from any of
> said customers whom Defendant has solicited in the
> past for the purpose of doing business with
> Defendant's present employer including, without
> limitation, all individuals and entities
> referenced in Exhibit "B" to Plaintiff's Verified
> Complaint (excluding immediate family and clients
> residing more than 100 miles from the Matteson,
> Illinois office of Merrill Lynch);
>
> b)  using, disclosing, or transmitting information
> contained in the records of Merrill Lynch,
> including but not limited to, the names,
> addresses, and financial information of clients
> referenced in Exhibit "B"; and that original
> records and copies thereof be returned to
> Plaintiff immediately;

3.  Plaintiff is granted leave to commence discovery
immediately;

4.  This Order shall remain in full force and effect
until January 7, 1992 at 4:20 p.m.

2

until such time as this Court specifically orders otherwise:

     5.    Defendant shall show cause before this Court on the _____ day of _____ 1991 at _____ o'clock _.m., or as soon thereafter as counsel may be heard, why a Preliminary Injunction should not be ordered according to the terms and conditions set forth above.

BY THE COURT:

s/ U.S. District Judge

                    U.S.D.J.

3

**EXHIBIT 13**

(rev 4/87)

# UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| Name of Assigned Judge or Magistrate | WILLIAM T. HART | Sitting Judge, Mag. If Other Than Assigned Judge, Mag. | |
|---|---|---|---|
| Case Number | 90 C 1034 | Date | FEB. 23, 1990 |
| Case Title | MERRILL LYNCH, PIERCE, FENNER & SMITH, etc. v. JAY A. CUNNINGHAM, et al | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3d-party plaintiff, and (b) state briefly the nature of the motion being presented]

Sent for microfilming

FEB 27 1990

Filmed on MAR 07 1990

DOCKET ENTRY: (The balance of this form is reserved for notations by court staff.)

(1) [X] Judgment is entered as follows:  (2) [ ] [Other docket entry:]
Enter Temporary Restraining Order.  (DRAFT)

(3) [ ] Filed motion of [use listing in "MOTION" box above].
(4) [ ] Brief in support of motion due _____
(5) [ ] Answer brief to motion due _____, Reply to answer brief due _____
(6) [ ] [ ] Hearing [ ] Ruling on _____ set for _____ at _____
(7) [ ] Status hearing [ ] held [ ] continued to [ ] set for [ ] reset for _____ at _____
(8) [ ] Pretrial conference [ ] held [ ] continued to [ ] set for [ ] reset for _____ at _____
(9) [ ] Trial [ ] set for [ ] reset for _____ at _____
(10) [ ] [ ] Bench trial [ ] Jury trial [ ] Hearing held and continued to _____ at _____
(11) [ ] This case is dismissed [ ] without [ ] with prejudice and without costs [ ] by agreement [ ] pursuant to
[ ] FRCP 4(j)(failure to serve) [ ] General Rule 2] (want of prosecution) [ ] FRCP 41(a)(1) [ ] FRCP 41(a)(2)
(12) [X] [ ] For further detail see [✓] order on the reverse of [ ] order attached to the original minute order form.]

| [ ] No notices required. | RECEIVED ED-1 | | number of notices | Document # |
|---|---|---|---|---|
| [X] Notices mailed by judge's staff. | 90 FEB 26 AM 8:33 | FEB 27 1990 | date docketed | 18 |
| [ ] Notified counsel by telephone. | | | docketing dpty. initials | |
| [ ] Docketing to mail notices. | | | | |
| [ ] Mail AO 450 form. | | | date mld. notices | |
| [ ] Copy to judge/magistrate. | | | | |
| courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing dpty. initials | |

This matte _ efore the court on motion o. } {ntiff Merrill Lynch, Pierce, Fenner & Smith, Inc. for a temporary retraining order restraining defendants Jay A. Cunningham, Steven P. Fromm, and Annette Sills, from utilizing confidential information of the plaintiff.

Based on the verified documents and the statements of counsel in open court, the court finds as follows:

1. The defendants resigned from the employment of the plaintiff on or about February 16, 1990 and immediately entered into the employment of a competitor.

2. If further appears that the defendants have executed undertakings not to remove or copy certain confidential information from the plaintiff upon terminating employment and also agreed not to solicit within a certain area for a period of one year any clients of plaintiff who were served or whose names became known to such defendants while in the employ of plaintiff.

3. It appears that defendants have taken certain documents and information pertaining to plaintiff's clients from plaintiff's premises.

4. Plaintiff will suffer irreparable harm and loss if defendants are permitted to (a) convert the property of Merrill Lynch to defendants' own personal use and benefit, and that of defendants' new employer, A.G. Edwards & Sons, Inc., and (b) solicit Merrill Lynch accounts, clients and customers.

5. Plaintiff has no adequate remedy at law.

6. Greater injury will be inflicted upon plaintiff by the denial of a temporary restraining order than would be inflicted upon defendants by the granting of such relief.

IT IS THEREFORE ORDERED that:

1. A Temporary Restraining Order issue upon security being entered by plaintiff in the amount of $25,000.00.

2. Upon entry of said security, defendants are enjoined and restrained, directly or indirectly, and whether alone or in concert with others, including any agent, representative or employee of defendants' current employer, until hearing and thereafter until further order of this court from:

a) soliciting any business from any client of Merrill Lynch whom defendants served or whose name became known to defendants while in the employ of Merrill Lynch, and from accepting any business from any of said customers whom defendants have solicited in the past for the purpose of doing business with defendants' present employer, including, without limitation, all individuals and entities referenced in Exhibit "D" to Plaintiff's Verified Complaint;

b) using, disclosing, or transmitting information contained in any records of Merrill Lynch, including the names, addresses, and financial information of clients described in Exhibit "D".

3. Defendants are ordered to provide in open court at 2:00 p.m. on February 26, 1990 all documents taken from the plaintiff on or before February 16, 1990 and all copies of all documents taken from the plaintiff on or prior to February 16, 1990.

4. This order shall remain in full force and effect for a period of ten days and thereafter as this court may order.

5. On the 28th day of February, 1990 at 2:00 p.m., a hearing will be held on the issue of whether or not a preliminary injunction shall be granted.

ENTER:  /

s/ U.S. District Judge
UNITED STATES DISTRICT JUDGE

Dated: FEBRUARY 23, 1990 at 4:45 p.m.

736 F.Supp. 887
(Cite as: 736 F.Supp. 887)

MERRILL LYNCH, PIERCE, FENNER &
SMITH, INC., Plaintiff,
v.
Jay A. CUNNINGHAM, Steven P. Fromm,
and Annette Sills, Defendants.

No. 90 C 1034.

United States District Court, N.D. Illinois,
Eastern Division.

April 27, 1990.

After brokerage firm filed complaint alleging that former employees violated their employment agreements by copying client files and soliciting clients, district court entered temporary restraining order prohibiting former employees from making further unsolicited client contacts. Employees then moved to compel expedited arbitration before stock exchange. The District Court, Hart, J., held that: (1) district court could not order that arbitration be on expedited basis, and (2) court retained jurisdiction to maintain and enforce restraining order pending arbitration.

Ordered accordingly.

**[1] EXCHANGES** ⟨= 11(12)
160k11(12)
District court could not order stock exchange to expedite arbitration between brokerage firm and its former employees since there was no contractual provision calling for arbitration on expedited basis. 9 U.S.C.A. § 3.

**[2] EXCHANGES** ⟨= 11(12)
160k11(12)
Pending arbitration before stock exchange in dispute between brokerage firm and its former employees did not divest district court of jurisdiction to maintain and enforce restraining order prohibiting employees from making further unsolicited contacts with individuals on firm's client lists, particularly in view of fact that employees did not challenge propriety of court's order of injunctive relief and had already solicited some individuals on lists after lists were clandestinely removed from firm's files and

copied. 9 U.S.C.A. § 3.

*888 Peter A. Cantwell and Stephen F. Boulton, Cantwell & Cantwell, Chicago, Ill., for plaintiff.

Joels J. Bellows and Nicholas P. Iavarone, Bellows & Bellows, Chicago, Ill., for defendants.

MEMORANDUM OPINION AND ORDER

HART, District Judge.

Defendants in this case, three former investment brokers for plaintiff ("Merrill Lynch"), clandestinely removed approximately 1800 client files and photocopied them before leaving the employ of Merrill Lynch on February 16, 1990, to work for a competing brokerage firm. Over the weekend after their termination, defendants sent solicitation letters to an undetermined number of these clients on behalf of their new employer. Merrill Lynch responded by filing a verified complaint in which it claimed that defendants' conduct violated the Account Executive Training Agreements signed by each. [FN1] After the parties were unable to work out a stand-by agreement to preserve the status quo, this court entered a temporary restraining order prohibiting defendants from making any other unsolicited contacts with individuals on the customer lists. The matter was then referred to a magistrate for a hearing and recommendation regarding the appropriateness of a preliminary injunction. In the interim, defendants have filed a motion to compel expedited arbitration before the New York Stock Exchange ("NYSE"). The issues presently before the court are whether defendants have filed a proper demand for arbitration, whether this court may order "expedited arbitration," and whether this court's restraining order should remain in effect until after the arbitrators have had sufficient time to consider the appropriateness of preliminary relief.

FN1. The Executive Training Agreement signed by each defendant contains clauses stating that (1) all of Merrill Lynch's client records shall remain the

Copr. © West 1999 No Claim to Orig. U.S. Govt. Works

Westlaw.    Westlaw

736 F.Supp. 887
(Cite as: 736 F.Supp. 887, *888)

property of Merrill Lynch at all times during and after the termination of the executive's employment, (2) the records are the sole proprietary information of Merrill Lynch and shall be treated as confidential, (3) the records shall not be removed from the premises of Merrill Lynch or duplicated or copied except with permission, (4) upon termination of his or her services, the executive will not solicit Merrill Lynch clients for a period of one year, and (5) the executive agrees that Merrill Lynch is entitled to injunctive relief and monetary damages if the solicitation clause is violated.

At the outset, it is important to state the issues that are not in dispute. In their initial motion to compel expedited arbitration, defendants emphasize that they "are not challenging the appropriateness of the issuance of the temporary restraining order already in place...." In fact, the parties have agreed to modifications to the order on two occasions. At the same time, Merrill Lynch does not take issue with defendants' contention that the issues raised in the complaint before this court are matters committed to arbitration before the NYSE. Merrill Lynch recognizes that NYSE Rule 347 [FN2] requires arbitration of *889 the issues once defendants have delivered a legally sufficient demand of arbitration. Defendants' March 21, 1990 Notice of Intent to Arbitrate is legally sufficient under the applicable New York law. [FN3]

FN2. NYSE Rule 347 provides that "[a]ny controversy between a registered representative and any ... member organization arising out of employment or termination of employment of such registered representative by and with such member organization shall be settled by arbitration, at the instance of any such party, in accordance with the procedure described elsewhere in these rules." Merrill Lynch is a member organization and each of the defendants is a registered representative.

FN3. Each of the Executive Training Agreements signed by defendants contains a choice of law clause requiring that the dispute be governed by New York law. , There is no dispute between the parties about the scope of this provision. Accordingly, the demand for arbitration is governed by Article 75, § 7503(c) of the New York Code of

Civil Procedure. . Under § 7503(c) a sufficient demand need only "specify the agreement pursuant to which the arbitration is sought and the name and the address of the party serving the notice.... Such notice and demand shall be served in the same manner as a summons or by registered or certified mail, return receipt requested."

[1] Defendants' motion requesting this court to order expedited arbitration before the NYSE, however, must be denied. Although the parties may agree to expedited arbitration as a matter of contract, the governing contractual provisions in this case do not so provide. Under these circumstances, the court cannot order the NYSE to proceed with this case in an expedited manner. Although defendants cite to a number of unpublished court orders which seem to so hold, these cases are not controlling. Section 3 of the Federal Arbitration Act specifically provides that a court may order arbitration to proceed in a manner provided for in the agreement between the parties. 9 U.S.C. § 3. Accordingly, this court is without authority to order the NYSE or plaintiff to expedite its proceedings.

[2] The final issue presented by defendants' motion is whether the pending arbitration divests the court of jurisdiction to maintain and enforce its restraining order pending arbitration. Defendants' position turns upon their interpretation of the provisions of the Federal Arbitration Act. The pertinent language of § 3 requires the federal court to "stay the trial of the action until such arbitration has been held in accordance with the terms of the [arbitration] agreement,..." This language of the Act, which is admittedly wanting, has been the source of a split among the federal circuits over the continuing jurisdiction of the federal courts. At least two members of the Supreme Court have recognized the significance of the controversy. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. McCollum, 469 U.S. 1127, 1129-31, 105 S.Ct. 811, 812-14, 83 L.Ed.2d 804 (1985) (White, J., dissenting from the denial of certiorari, joined by Blackmun, J.).

In support of their position, defendants rely

Copr. © West 1999 No Claim to Orig. U.S. Govt. Works





736 F.Supp. 887
(Cite as: 736 F.Supp. 887, *889)

Page 5

on the Eighth Circuit's decision in Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey, 726 F.2d 1286 (8th Cir.1984), and prior lower court cases interpreting the Act as precluding such relief. In Hovey, the Eighth Circuit held that the lower court's order of preliminary injunctive relief pending arbitration was an abuse of discretion because it abrogated congressional intent in enacting the Federal Arbitration Act. This interpretation of the jurisdictional effect of § 3 of the Act has been called into question, and the Eighth Circuit now stands alone in this determination. A growing line of subsequent federal circuit cases hold that an order staying the proceedings pending arbitration does not divest the district court of subject matter jurisdiction to enter interim injunctive relief, and that such relief may, in appropriate cases, fulfill the objectives of the Act. Ortho Pharmaceutical Corp. v. Amgen Inc., 882 F.2d 806, 811 (3rd Cir.1989); Teradyne v. Mostek, 797 F.2d 43, 47 (1st Cir.1986); Merrill Lynch, Pierce, Fenner & Smith v. Bradley, 756 F.2d 1048, 1052 (4th Cir.1985); Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Co., 749 F.2d 124, 125 (2d Cir.1984). In addition to these cases, the Seventh Circuit specifically held that it was error for the district court not to grant injunctive relief pending arbitration of a matter where plaintiff established the factors for obtaining a preliminary injunction. Sauer-Getriebe KG v. White Hydraulics, Inc., 715 F.2d 348 (7th Cir.1983), cert. denied, 464 U.S. 1070; 104 S.Ct. 976, 79 L.Ed.2d 214 (1984)).

*890 In its decision in Bradley, the Fourth Circuit aptly underscored the policy rationale supporting its decision and interpretation of the Act.

[W]here a dispute is subject to mandatory arbitration under the Federal Arbitration Act, a district court has the discretion to grant a preliminary injunction to preserve the status quo pending arbitration of the parties' dispute if the enjoined conduct would render that process a 'hallow formality.' The arbitration process would be a hallow formality where 'the arbitral award when rendered could not return the parties substantially to the status quo ante.' ...

[this] decision will further, not frustrate, the policies underlying the Federal Arbitration Act.

Bradley, 756 F.2d at 1053-54.

In terms that are directly applicable to the present case, the Bradley court went on to explain why maintaining injunctive relief pending arbitration was appropriate·

In this case preliminary injunctive relief pending arbitration furthers congressional policy by ensuring that the dispute resolution would be a meaningful process because without such an injunction, Bradley's conduct might irreversibly alter the status quo. When an account executive breaches his employment contract by soliciting his former employer's customers, a nonsolicitation clause requires immediate application to have any effect. An injunction even a few days after solicitation has begun is unsatisfactory because the damage is done. The parties cannot be 'unsolicited.' It may be impossible for the arbitral award to return the parties substantially to the status quo ante because the prevailing parties' damages may be too speculative.

In this case, the grounds for maintaining the injunction are even more compelling than in Bradley. Defendants do not purport to challenge the propriety of the court's order of injunctive relief. The injunctive order has been modified by agreement of the parties to fit their compelling needs. Prior to entering the order, this court received affidavits and copies of deposition testimony confirming that Merrill Lynch's customer files, which included personal and confidential client information, were clandestinely removed over a period of time and copied. There was also evidence that at least some of these clients received solicitation letters from one of the defendants encouraging them to transfer their accounts to defendants' new employer.

At the same time, the court is not persuaded that defendants will suffer any undue hardship if the restraining order is maintained until the arbitrators are able to address the question of preliminary relief. Defendants

Copr. © West 1999 No Claim to Orig. U.S. Govt. Works

Westlaw.

Westlaw

736 F.Supp. 887
(Cite as: 736 F.Supp. 887, *890)

Page 6

argue that the injunction prevents them from pursuing their livelihood. This contention is specious; defendants are free to contact new clients, and presumably have done so. Additionally, any of the clients who desire to transfer their accounts to follow the defendants to their new brokerage firm are free to do so.

IT IS THEREFORE ORDERED that:

(1) Defendants' motion to stay the trial in this case pending arbitration is granted.

(2) Defendants' motion requesting the court to order "expedited" arbitration is denied.

(3) This court's modified order of injunctive relief will remain in effect pending arbitration until the arbitration panel is able to address whether continuing injunctive relief is necessary. This should not be a protracted period of time.

(4) The reference to the magistrate is vacated.

(5) This case is set for a report on status on July 2, 1990 at 9:15 a.m.

END OF DOCUMENT

Copr. © West 1999 No Claim to Orig. U.S. Govt. Works



**EXHIBIT 14**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

MERRILL LYNCH, PIERCE, FENNER ) 
AND SMITH, a Delaware corporation, ) 
        Plaintiff, ) 
                )      Case No. 90 C 20210
        v., ) 
JOHN N. TOBIAS, ) 
        Defendant. )

### ORDER

Before the court is Plaintiff's motion to extend the temporary restraining order issued in this case on July 17, 1990 or, in the alternative, to convert the temporary restraining order into a preliminary injunction order. Also before the court is Defendant's motion to vacate the temporary restraining order. For the reasons set forth herein, Plaintiff's motion to extend the temporary restraining order is granted. Plaintiff's alternative motion to convert the temporary restraining order into a preliminary injunction is denied. Defendant's motion to vacate the temporary restraining order is denied. Any further proceedings in this case are stayed pending an award and final decision by the arbitration panel of the New York Stock Exchange. The temporary restraining order shall remain in effect pending arbitration until the arbitration panel is able to address whether continuing injunctive relief is necessary.

Feb-09-05   03:38pm   From-ARCHER GREINER
1:05-cv-01642-JBM-JAG pm   # 3/2   nentient vaintin winnin   Page 33 of 50

+856 795 0574

T-046   P.059/084   F-315

09/23/99   THU 16:27 FAX 610 835 3348                HERTZ SCHRAN SARETSKY

@ 012

## BACKGROUND

On July 17, 1990, this court issued a temporary restraining order (hereinafter "TRO") in this cause of action. The TRO was issued after notice was given to Defendant and after the court heard and considered the motions, oral evidence and other submissions of both parties. The court found that the Account Executive Trainee Agreement, that was the subject matter of the dispute, contained various restrictions on Defendant's ability to use Plaintiff's records and otherwise compete with Plaintiff upon a change of Defendant's employment.[1] The court found that Plaintiff would suffer irreparable harm and loss in the event that a TRO was not issued. The court further found that Plaintiff had no adequate remedy at law and that greater injury would be inflicted upon Plaintiff by the denial of the TRO than would be inflicted upon Defendant by the granting of the TRO. Finally, the court found that the parties had previously agreed to binding arbitration and, therefore, ordered the parties to submit the dispute to arbitration.

---

[1] Specifically, the Account Executive Trainee Agreement signed by Defendant contains clauses stating that (1) all of Merrill Lynch's client records shall remain the property of Merrill Lynch at all times during and after the termination of the executive's employment, (2) the records shall not be removed from the premises of Merrill Lynch or duplicated or copied, (3) upon termination of his or her services, the executive will not solicit Merrill Lynch clients for a period of one year, and (4) the executive agrees that any controversy arising out of the employment relationship or the termination of employment shall be settled by arbitration in accordance with the Constitution and Rules of the New York Stock Exchange, then in effect.

Feb-09-05   03:38pm   From-ARCHER GREINER                    +856 795 0574        T-046  P.060/084  F-315
1:05pm. 0400p0BM: JAG      # ALA12  JLMMAK GMRL.KUR.   Page 34 of 50

09/23/99  THU 18:27 FAX 810 335 3346          HERTZ SCHRAN SARETSKY
                                                                                          ☒013

3

The TRO itself enjoined and restrained Defendant from
soliciting any client of Plaintiff's whom Defendant served or
whose name became known to Defendant while in Plaintiff's employ.
Defendant was further enjoined and restrained from accepting any
business from any of these customers whom Defendant solicited for
the purpose of doing business with Hamilton Investments, Inc.
Finally, Defendant was enjoined and restrained from using,
disclosing or transmitting information contained in the records
of Plaintiff, including the names, addresses and financial
information of clients. Defendant was ordered to deliver any of
Plaintiff's original records or copies to Plaintiff's attorney.
The court also ordered the parties to submit themselves to
arbitration in this matter.

On July 23, 1990, the parties appeared before the court to
report on the status of the cause of action. The court learned
at that time that both parties had submitted a statement of claim
and a filing fee to the Director of Arbitration for the New York
Stock Exchange. However, no arbitration panel had been chosen,
much less convened, as of that date. Plaintiff is now before
this court seeking an extension on the TRO or, in the
alternative, a conversion of the TRO into a preliminary
injunction. Defendant, on the other hand, asks this court to
vacate the TRO.

4

## DISCUSSION

The Account Executive Trainee Agreement provides that its validity, performance and enforcement shall be governed by the laws of New York. However, as Defendant admits in its memorandum in support of its motion to vacate the temporary restraining order, a Federal court is not bound by New York law because the United States Arbitration Act, 9 U.S.C. SS1-15 (1976) is applicable to this action and, therefore, Federal law determines whether the dispute is arbitrable.

This court has already held that the dispute in this action is arbitrable. The court has further ordered the parties to submit the dispute to arbitration. The only question before the court, then, is the status of the TRO during the pendency of the arbitration proceedings.

Rule 65(b) of the Federal Rules of Civil Procedure provides that a TRO:

> . . . shall expire by its terms within such time after entry, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period. The reasons for the extension shall be entered of record .

Rule 65(b) presumably contemplates only TROs issued without notice to the adverse party. The rule is silent as to whether a TRO issued with notice to the adverse party expires after 10 days.

5

Illinois law is instructive in this area. The Illinois law in relation to temporary restraining orders is codified in 110 Ill. Rev. Stat. ¶11-101. Illinois TRO law tracks the language of Federal Rule of Civil Procedure 65(b). Illinois case law, however, provides more insight into whether a TRO issued with notice to the adverse party expires after 10 days.

In this regard, Illinois case law indicates that TROs issued with notice to the adverse party do not necessarily expire after 10 days. In City of Chicago v. Westphalen, 93 Ill. App.3d 1110, 49 Ill. Dec. 419, 431 (1st Dist. 1981), appeal dismissed, cert. denied, 455 U.S. 996, 102 S. Ct. 1625 (1982), the court held that when notice is provided in conjunction with a TRO, the TRO can be issued for a period greater than ten days. See, also, Lawyer International, Inc. v. Carroll, 107 Ill. App.3d 938, 63 Ill. Dec. 559 (1st Dist. 1982); Kable Printing Co. v. Mount Morris Bookbinders Union Local 65-B, 63 Ill.2d 514, 349 N.E.2d 36 (1976). This holding makes sense. The trade-off for an ex parte issuance of a TRO is that the TRO has a limited life. Levas and Levas v. Village of Antioch. Ill., 684 F.2d 446, 448 (7th Cir. 1982). This type of protection is not required when a TRO is issued with notice and both parties have had an opportunity to present evidence before the court.

The intent of this court when it entered the TRO on July 17, 1990, was to maintain the status quo without prejudice to the merits of the claims and defenses that were or may yet be asserted in this litigation until an arbitration panel composed

6

of experts in the field can hear the issues and make findings in relation to the issues presented. The court intended the TRO to remain in effect until the arbitration panel could hear the issues and decide whether to extend the TRO or dissolve it as they see fit. The court stayed any further proceedings in this action until an award and final decision was issued by the arbitration panel.

This is still the court's intent. The court, therefore, extends, in its own discretion, the period of the TRO until arbitration can be held in this matter and until the arbitration panel can render an informed decision as to whether the TRO should remain in effect. The court bases its finding on the belief that Plaintiff will suffer irreparable injury if the time of the TRO is not extended.[2] The court further finds that Plaintiff has no adequate remedy at law and that greater injury will be inflicted upon Plaintiff by the denial of the extension of the time for the TRO than would be inflicted upon Defendant by the granting of the extension.

The court will not, however, grant Plaintiff's alternative motion for a preliminary injunction. A preliminary injunction would require the court to inquire into Plaintiff's likelihood of success on the merits to a greater extent than that required for

---

[2] As cited by Judge Hart in _Merrill Lynch v. Cunningham_, 736 F. Supp. 887 (N.D. 1990), once an executive breaches his employment contract by soliciting his former employer's customers, the damage has been done. The clients cannot be "unsolicited." Accordingly, this is where the irreparable damage factor of the TRO comes into play. 736 F. Supp. at 890, _citing_, _Merrill Lynch v. Bradley_, 756 F.2d 1048, 1053-54 (4th Cir. 1985).

Feb-09-05    03:39pm    From-ARCHER GREINER Page 38 of 50    +856 795 0574    T-046    P.064/084    F-315
1:05 pm 01/04  IBM-JAG   #3-2  HERTZ SCHRAM SARETSKY

09/23/99    THU 18:28 FAX 810 335 3346    HERTZ SCHRAM SARETSKY    @017

7

the issuance of a TRO. Such a judicial inquiry would inject the court into the merits of issues more appropriately left to the arbitration panel. Moreover, while the granting of a preliminary injunction is within this court's discretion, the issuance of injunctive relief abrogates the intent of the Federal Arbitration Act and, therefore, would be an abuse of this court's discretion. See, e.g., Merrill Lynch v. Hovey, 726 F.2d 1286 1291-92 (8th Cir. 1984); Merrill Lynch v. Cunningham, 736 F. Supp. 887 (N.D. 1990).

Defendant argues that the temporary restraining order should be vacated. In support of his motion, Defendant contends that the TRO precludes Defendant from earning a living. This court agrees with the court in Cunningham, supra, that it is not persuaded that Defendant will suffer any undue hardship if the TRO is maintained until the arbitration panel is able to address the question of preliminary relief. Defendant's argument that his livelihood is being harmed is specious. Defendant is free to contact new clients and to solicit business from them. Accordingly, Defendant's motion to vacate the TRO is denied.

Finally, Defendant asks this court to order expedited arbitration before the New York Stock Exchange. This issue was also before the court in Merrill Lynch v. Cunningham, supra. As in that case, this court finds that although parties to a contract may agree to expedited arbitration, the contractual provisions in this case do not provide for expedited arbitration. The Account Executive Training Agreement simply states that any

8

controversy surrounding the termination of the executive's employment with Plaintiff shall be settled by arbitration "in accordance with the Constitution and Rules of the New York Stock Exchange."[1] Under these contractual terms, the court cannot order the New York Stock Exchange to proceed with this case in an expedited manner. Section 3 of the Federal Arbitration Act specifically provides that a court may order arbitration to proceed in a manner provided for in the agreement between the parties. 9 U.S.C. §3. Accordingly, while it is the intent and desire of this court that the arbitration proceedings take place in a expeditious manner, the court is without authority to order the New York Stock Exchange, a non-party in this suit, or Plaintiff to expedite the arbitration proceedings.

## CONCLUSION

For the reasons set forth herein, Plaintiff's motion to extend the temporary restraining order is granted. Plaintiff's alternative motion to convert the temporary restraining order into a preliminary injunction is denied. Defendant's motion to

---

[1] Paragraph 5 of the Account Executive Trainee Agreement states as follows:

> I agree that any controversy between myself and Merrill Lynch arising out of my employment, or the termination of my employment, with Merrill Lynch for any reason whatsoever shall be settled by arbitration at the request of either party in accordance with the Constitution and Rules of the New York Stock Exchange, then in effect.

9

vacate the temporary restraining order is denied. Any further
proceedings in this case are stayed pending an award and final
decision by the arbitration panel of the New York Stock Exchange.
The temporary restraining order shall remain in effect pending
arbitration until the arbitration panel is able to address
whether continuing injunctive relief is necessary. This should
not be a protracted period of time. Parties are to report to
this court for status on September 12, 1990 at 11:00 a.m.

ENTER:

s/ U.S. District Judge

STANLEY J. ROSZKOWSKI, JUDGE
UNITED STATES DISTRICT COURT

DATED: July 26, 1990

**EXHIBIT 15**

☑ 050

08/23/98  THU 16:40 FAX 810 335 3348        HERTZ SCHRAM SARETSKY

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MERRILL LYNCH, PIERCE, FENNER )
  & SMITH, INC.                )
A DELAWARE CORPORATION         )
MERCHANDISE MART PLAZA         )
SUITE 444                      )
CHICAGO, ILLINOIS  60654       )        Judge Suzanne B. Conlon
                               )
        Plaintiff              )
                               )
        v.                     )        No. 90 C 5031
                               )
ANN P. ROSENBAUM               )
1915 CALVIN COURT              )
RIVERWOODS, ILLINOIS  60015    )
                               )
        Defendant              )

## ORDER

AND NOW, this 29th day of August, 1990, upon
consideration of the Verified Complaint and Motion of plaintiff and
having determined that:

1.   Plaintiff will suffer irreparable harm and loss if
defendant is permitted to (a) convert the property of Merrill Lynch
to defendant's own personal use and benefit, and that of
defendant's new employer, Rodman & Renshaw, and (b) solicit Merrill
Lynch accounts, clients and customers;

2.   Plaintiff has no adequate remedy at law; and

3.   Greater injury will be inflicted upon plaintiff by
the denial of temporary injunctive relief than would be inflicted
upon defendant by the granting of such relief.

IT IS HEREBY ORDERED AND DECREED THAT:

25-000(—)

1.    A Temporary Restraining Order issue upon the posting
of security in the amount of $10,000.00, effective 1:30 p.m.,
August 29, 1990:

2.    Defendant is hereby enjoined and restrained,
directly or indirectly, and whether alone or in concert with
others, including any agent, representative or employee of
defendant's current employer, until hearing and thereafter until
further order of this court from:

(a) soliciting any business from any client of
Merrill Lynch whom defendant served or whose name became known to
defendant while in the employ of Merrill Lynch, and from accepting
any business from Merrill Lynch customers whom defendant has
solicited on or after August 17, 1990 for the purpose of doing
business with defendant's present employer, including, without
limitation, all individuals and entities referenced in Exhibit "B"
to plaintiff's Verified Complaint; excluding only accounts of the
following family members: Richard C. Rosenbaum, husband; Kurt
Rosenbaum, father-in-law; Thomas L. Pharmakis, father; Thomas P.
Wada, ex-husband; Forest Financial Services, Inc., husband's
account;

(b) using, disclosing or transmitting information
contained in the records of Merrill Lynch, including the names,
addresses and financial information of clients referenced in
Exhibit "B"; and that original records and copies thereof be
returned to plaintiff.

3.    This order shall remain in full force and effect
until Tuesday, September 11, 1990, at 9:00 a.m., at which time the

parties. by their counsel, shall appear in this court to report on
the status of this case.

Dated this  5  day of August, 1990.    *September*

ENTER:

S/ *Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

Prepared by:
Scott C. Sullivan
Williams & McCarthy
P.O. Box 219
Rockford, IL  61105
(815) 987-8900

**EXHIBIT 16**

Copy mailed to attorneys for
parties by the Court pursuant
to Rule 77 (d) Federal Rules of
Civil Procedure.

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MORGAN STANLEY DW INC.,
t/a "MORGAN STANLEY,"

Plaintiff,                          Case No. 01-C-469

v.

RICHARD WUTZ, RICHARD HEEREN,
BRUCE RATTAY, JIM KIECKHAEFER
and JUDITH A. GAMACHE,

Defendants.

> U.S. DIST. COURT EAST DIST. WISC.
> FILED
>
> MAY 14 2001
>
> AT _____ O'CLOCK _____ M
> SOFRON B. NEDILSKY

## DECISION AND ORDER

Morgan Stanley DW, Inc. is suing five of its former employees for
breach of contract, conversion, breach of fiduciary duty and unfair competition
after the Defendants quit working for Morgan Stanley and joined another financial
services company and began soliciting Morgan Stanley's customers. Just six days
after the employees quit, Morgan Stanley commenced this case and moved the
court for a temporary restraining order enjoining its former employees from using
information which the Defendants acquired while in the Plaintiff's employ. See
Federal Rule of Civil Procedure 65(a).

With notice to the Defendants, the court held a hearing on the
Plaintiff's motion on May 11, 2001. A temporary restraining order can issue if the
moving party establishes that it will suffer irreparable injury if relief is not granted;

that there exists substantial likelihood of success on the merits; that issuing a temporary restraining order would serve the public interest; and that the balance of harm to the movant outweighs the harm to the nonmovants. See Plummer v. American Institute of Certified Public Accountants, 97 F.3d 220, 229 (7th Cir. 1996). After listening to the arguments of counsel and based upon the documents in the record, the court finds that, by soliciting Morgan Stanley's customers, the Defendants breached their employee agreements with Morgan Stanley and have caused irreparable harm by soliciting Morgan Stanley's customers. At this very early stage of this litigation it appears that the Plaintiff is likely to prevail on the breach of contract claim. These contracts provide that, in the event of breach, any remedy at law will be inadequate. The harm to the Plaintiff which will result from the Defendants' use of Morgan Stanley's allegedly confidential information outweighs the harm to the Defendants. So that the public interest will not be disserved, the court will protect the public's ability to choose to do business with any of the parties.

Therefore, the court ORDERS that the Plaintiff's Motion for a Temporary Restraining Order (filed May 11, 2001) IS GRANTED. The request for a preliminary injunction is denied without prejudice.

Under the terms of the temporary restraining order, Defendants Richard Wutz, Richard Heeren, Bruce Retay, Jim Kieckhaefer and Judith A.

2

Gamache, as well as their agents, servants, future employers and those in active

concert or participation with them who receive actual notice of this order shall:

     1. be temporarily enjoined directly or indirectly, or in concert with one another, from disclosing or transmitting any of the proprietary confidential information obtained from the Morgan Stanley records and files, including, but not limited to the names and addresses and financial information of those customers with whom the Defendants have been dealing and for soliciting any business from the Morgan Stanley customers during the period of this temporary restraining order.

     2. on or before 5:00 p.m. on May 14, 2001, deliver to the Morgan Stanley office, the original Morgan Stanley records. This includes originals which the Defendants may have copied rather than the originals themselves and any software or copies of software, including computerized versions of these records.

IT IS FURTHER ORDERED that, if the Defendants accept business from people whose accounts they handled at Morgan Stanley, the customer shall send notice to the Plaintiff in writing stating that the customer has made the selection independent of any solicitation on the part of the Defendants.

IT IS FURTHER ORDERED that, pursuant to the National Association of Securities Dealers (NASD) Code of Arbitration Procedure § 10335, this action is referred to the NASD for further proceedings.

IT IS FURTHER ORDERED that this temporary restraining order is in effect for ten days or until the NASD arbitration commences, whichever is sooner.

3

IT IS FURTHER ORDERED that bond in the amount of Five Thousand Dollars ($5,000.00) be posted on or before 12:00 noon on May 14, 2001.

IT IS FURTHER ORDERED that the parties shall file certificates of interest within three days of the date of this order.

IT IS FURTHER ORDERED that, because the parties are proceeding to arbitration and because there appears to be no reason to maintain this file as an open case at this time, the Clerk of Court shall submit a JS-6 Form to the Administrative Office of the Untied States Courts, thereby closing the case for administrative purposes. Nothing in this order shall be considered a dismissal or disposition of this matter and any party may reopen the case at any time by advising the court and opposing counsel in writing that it is ready to proceed with the case and that the arbitration has concluded.

Done and Ordered in Chambers at the United States Courthouse, Milwaukee, Wisconsin, this 11th day of May, 2001.

S/ Thomas J. Curran

Thomas J. Curran
United States District Judge

4

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MORGAN STANLEY DW INC.,
t/a "MORGAN STANLEY,"

                    Plaintiff,                    Case No. 01-C-469

        v.

RICHARD WUTZ, RICHARD HEEREN,
BRUCE RATAY, JIM KIECKHAEFER
and JUDITH A. GAMACHE,

                    Defendants.



U.S. DIST. COURT EAST DIST. WISC.
FILED

MAY 18 2001

AT_____ O'CLOCK_____M
SOFRON B. NEDILSKY

## ORDER

  For good cause shown, namely the fact that the National Association of Securities Dealers has not yet scheduled an arbitration hearing in this matter, the court ORDERS that the Plaintiff's "Motion to Extend Temporary Restraining Order or, in the Alternative, for a Preliminary Injunction Hearing" (filed May 18, 2001) IS GRANTED. The temporary restraining order is extended until 11:59 p.m. on May 31, 2001.

  Done and Ordered in Chambers at the United States Courthouse, Milwaukee, Wisconsin, this _____ day of _____, 2001.

                    s/Thomas J. Curran
                    Thomas J. Curran
                    United States District Judge